**IN THE**
**UNITED STATES COURT OF APPEALS FOR THE SEVENTH CIRCUIT**

ANNA KINNEY
(Plaintiff-Appellant)

v.

ST. MARY'S HEALTH, INC., d/b/a ASCENSION ST. VINCENT EVANSVILLE, INC.
(Defendant-Appellee)

Case No. 22-2740

**APPELLANT'S BRIEF**

On appeal from the United States District Court
For the Southern District of Indiana
Case No. 3:20-cv-00226-RLY-MPB

Respectfully submitted,

*/s/Kyle F. Biesecker*
Kyle F. Biesecker
Biesecker Dutkanych & Macer, LLC
411 Main Street
Evansville, IN 47708
(812) 424-1000

i

## RULE 26.1 DISCLOSURE STATEMENT

Appellate Court No. 22-2740
Short Caption: <u>Kinney v. St. Mary's Health</u>

To enable to the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental curiae, or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

The Court prefers that the disclosure statement be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answering in this Court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information. The text of the statement must also be included in front of the table of contents of the party's main brief. **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

1. The full name of every party the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P. 26.1 by completing item # 3).
   <u>Anna Kinney, Plaintiff-Appellant</u>

2. The name of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:
   <u>BIESECKER DUTKANYCH & MACER, LLC</u>

3. If the party or amicus is a corporation:
   (i)   Identify all of its parent corporation if any; and
         <u>N/A</u>
   (ii)  List any publicly held company that owns 10% or more of the party's or amicus' stock <u>N/A</u>

Attorney's signature: <u>*/s/Kyle Biesecker*</u>        Date: <u>12/5/2022</u>
Attorney's Printed Name: <u>Kyle Biesecker</u>

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d)
Yes[X]. No[ ].
Address: <u>411 Main Street, Evansville, IN 47708</u>
Phone: <u>(812) 424-1000</u> Fax: <u>(812) 424-1005</u> Email: <u>kfb@bdlegal.com</u>

## TABLE OF CONTENTS

Disclosure Statement…………………………………………………………………..ii

Table of Contents…………………………………………………………………………iii

Table of Authorities……………………………………………………………………iv

Statement in Support of Oral Argument…………………………………………………vi

Jurisdictional Statement………………………………………………………………..1

Statement of Issues……………………………………………………………………..1

Statement of the Case…………………………………………………………………...3

Summary of Argument…………………………………………………………………9

Argument………………………………………………………………………………...10

    I.       Standard of Review…………………………………………………………10

    II.      Kinney's ADA Claims………………………………………………………10

        a.  Failure to Accommodate…………………………………………………10

        b.  Retaliation………………………………………………………………..12

        c.  Discrimination……………………………………………………………14

    III.    Kinney's Title VII Claims…………………………………………………...15

        a.  Failure to Promote……………………………………………………15

            i.  Warrick County Hospital Administrator……………………………16

            ii.  Vice President of Finance………………………………………..17

        b.  Retaliation………………………………………………………………..17

    IV.    Conclusion………………………………………………………………...18

Certificate of Compliance with F.R.A.P. 32(a)(5)-(6)…………………………………...19

Certificate of Compliance with F.R.A.P. 32(a)(7)………………………………………20

Certificate of Compliance with Circuit Rule 30(D)……………………………………...20

Certificate of Service……………………………………………………………………20

# TABLE OF AUTHORITIES

**CASES**

*Blickle v. Ill. Dep't of Children and Family Servs.*
No 12 C 9795, 2013 U.S. Dist. LEXIS 80014, 2013 WL 2467651,
at *8-*10 (N.D. Ill. June 7, 2013)………………………………………………..…14, 15, 18

*Celotex Corp. v. Catrett*
477 U.S. 317 (1986)…………………………………………………………………...10

*Dickerson v. Bd. Of Trs. Of Comm. College Dist. No. 522*
657 F.3d 595, 601 (7th Cir. 2011)………………………………………………..12, 14, 17

*EEOC v. Sears, Roebuck & Co.*
233 F.3d 432,440 (7th Cir. 2000)………………………………………………...14, 15, 18

*EEOC v. University of Chicago Hospitals*
276 F.3d 236, 331 (7th Cir. 2002)……………………………………..………14, 15, 18

*Gratzl v. Office of the Chief Judges of the 12th, 18th, 19th, and 22nd Judicial Circuits*
 601 F.3d 647, 679 (7th Cir. 2010)…………………………………………………..…11

*Guzman v. Brown Cnty.*
884 F.3d 633, 642 (7th Cir. 2018)…………………………………………………..…10

*Hobbs v. City of Chicago*
573 F.3d 454, 462 (7th Cir. 2009)……………………………………………..…………16

*Moore-Fotso v. Bd. of Educ. of City of Chi.*
211 F. Supp. 3d 1012, 1037 (N.D. Ill. 2016)……………………………………………12

*Riley v. Elkhart Cmty. Schs.*
829 F.3d 886, 891-92 (7th Cir. 2016)……………………………………..……...15

*Tindle v. Pulte Home Corp.*
607 F.3d 494, 495 (7th Cir. 2010)………………………………………………..10

*Tolan v. Cotton*
572 U.S. 650, 657 (2014)………………………………………………………...10

**STATUTES**

28 U.S.C. § 1291…………………………………………………………………..1

28 U.S.C. § 1294…………………………………………………………………………..1

28 U.S.C. § 1331…………………………………………………………………………..1

42 U.S.C. § 12117…………………………………………………………………………1

42 U.S.C. § 2000e-5(f)(3)…………………………………………………………………1

**RULES**

Fed. R. Civ. P. 56(a)……………………………………………………………………1, 9

Fed. R. App. P. 3…………………………………………………………………………..1

## STATEMENT IN SUPPORT OF ORAL ARGUMENT

Appellant requests oral argument to be heard in this matter where the issues presented are technical in nature and governed by both statute and common law. Oral argument would assist this Court in understanding and evaluating the merits of the case at bar.

## STATEMENT OF JURISDICTION

Plaintiff-Appellant, Anna Kinney, brought her Complaint and Amended Complaint against Defendant-Appellee, St. Mary's Health, Inc., d/b/a Ascension St. Vincent Evansville, Inc., for, *inter alia*, violations of the Americans with Disabilities Act ("ADA"), as amended, 42 U.S.C. § 12101 *et seq.,* and Title VII of the Civil Rights Act of 1964, ("Title VII"), as amended, 42 U.S.C. § 2000e *et seq.* Jurisdiction was conferred on the District Court over the subject matter of the litigation pursuant to 28 U.S.C. § 1331; 42 U.S.C. § 2000e-5(f)(3); and 42 U.S.C. § 12117.

Following the Appellee's filing of a Motion for Summary Judgment pursuant to Fed. R. Civ. P. 56(a), the District Court dismissed the entirety of Appellant's Amended Complaint on August 31, 2022. [District Court Docket Numbers "Doc No.") 58 and 59 (Short Appendix ("App") A-1 and A-2]. Appellant filed her timely notice of appeal pursuant to Fed. R. App. P. 3 on September 28, 2022. [Doc No. 61]. This Court has jurisdiction over this timely appeal pursuant to 28 U.S.C. §§ 1291 and 1294.

## ISSUES PRESENTED ON APPEAL

1. Whether the Federal District Court for the Southern District of Indiana erred in dismissing Appellant's claims by finding that Appellant did not experience an adverse employment action.

2. Whether the Federal District Court for the Southern District of Indiana erred in dismissing Appellant's claims by finding that Appellant's request was not reasonable given the requirement of the position.

3.  Whether the Federal District Court for the Southern District of Indiana erred in

    dismissing Appellant's claims by finding that Appellee did not fail to promote Appellant

    based on her gender.

4.  Whether the Federal District Court for the Southern District of Indiana erred in

    dismissing Appellant's claims by finding that Appellee did not retaliate against

    Appellant.

## STATEMENT OF THE CASE

Appellant, Anna Kinney (hereinafter "Kinney"), filed this action in the Federal District Court for the Southern District of Indiana on September 28, 2020, against St. Mary's Health, Inc., d/b/a Ascension St. Vincent Evansville (hereinafter "St. Vincent"), alleging disability discrimination in violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.*, sex discrimination in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq.*, violations of Family Medical Leave Act ("FMLA"), as amended, 29 U.S.C. §2601 *et seq.* and retaliation in violation of the ADA and Title VII. This action followed the pervasive discrimination and harassment perpetrated by St. Vincent. Kinney then filed an amended complaint following her constructive discharge on August 6, 2021. Prior to her constructive discharge, Kinney had filed multiple internal complaints of harassment and discrimination, as well as two (2) Charges of Discrimination with the EEOC, to which nothing was done.

Kinney is considered highly qualified in her field and has over twenty-five (25) years of experience in the operation of service lines in the healthcare industry as well as holding an MBA in Healthcare Administration. [**Exhibit 32 – Kinney Depo.**[1] (hereinafter "Kinney Depo." at pgs. 9 & 51**; Exhibit 1 – Kinney Resume**]. Kinney was hired in 2016 as the Executive Director of Imaging Services. At the time of her hire, Kinney expressed to St. Vincent's recruiter, Kathy Hall, that maintaining the title of Executive Director was paramount to Kinney's employment with St. Vincent, as she was already working in a VP position. [Kinney Depo. at pgs. 90-92;

**Exhibit 2 – April 26, 2016 Email between Kinney and Lainie Collins; Exhibit 3 – Executive**

---

[1] All of the exhibits cited to in the Statement of Facts section were submitted by the parties in support of their respective summary judgment motion filings. Here, the exhibits cited to within this brief correlate with the exhibits that were filed with Plaintiff's Response in Opposition to Defendant's Motion for Summary Judgment. [Doc. No. 53].

**Director of Imaging Services Job Description**].  However, in July 2017, Kinney was stripped of her Executive Director title and made Director of Radiology as part of an organization-mandated consolidation of job titles, which only affected female employees at St. Vincent's Evansville location. [Kinney Depo. at 89-95; **Exhibit 33 – Greaney Depo.** (hereinafter "Greaney Depo.") at pgs. 26-27; **Exhibit 4 – Director of Radiology Job Description**]. Kinney's new title came with a decreased compensation bracket, which effectively barred her from advancing in the position because it capped her out for pay. [Exhibit 4 – Director of Radiology Job Description].

Kinney has been diagnosed with ADHD and anxiety since 2015 and PTSD since 2017, which are treated with Adderall and Xanax. [Kinney Depo. at pgs. 7, 21-22, 25]. St. Vincent was aware of Kinney's disabilities because she self-reported them on St. Vincent's personnel portal. [Kinney Depo. at pgs. 23, 136]. Further, Kinney obtained intermittent FMLA with St. Vincent in the Fall of 2018 due to her anxiety, which her supervisor, John Greaney, was aware of. [Kinney Depo. at pgs. 97-98; Greaney Depo. at pgs. 28-30]. Greaney admits to asking Kinney if she planned on continuing to utilize her FMLA. [Greaney Depo. at pgs. 28-30].

Despite being stripped of her Executive Director title and having her salary increase and advancement opportunities foreclosed, Kinney excelled at her position and continued to exceed St. Vincent's legitimate performance expectations. In fact, her performance was such, her standards became the nationwide productivity standards for all of Imaging Services throughout the organization. [**Exhibit 34 – Parod Depo.** (hereinafter "Parod Depo.") at pg. 23]. Dan Parod, St. Vincent's President of the Southwest Region, acknowledged that Kinney was eligible for a transfer or promotion within St. Vincent based on her excellent performance. [Parod Depo. at pg. 57]. Based on this, Kinney felt confident in applying for and pursuing various positions within

the St. Vincent organization. Despite Kinney's excellent performance and acknowledgement from Parod, Greaney evaluated Kinney during her annual performance review as "needing improvement", presumably to disqualify her from promotional opportunities. [**Amended Complaint and Demand for Jury Trial** – Doc. No. 28 at paragraph 25; **Exhibit 8 – Kinney Performance Review**].

Throughout her tenure with St. Vincent, Kinney had applied for or expressed serious interest in approximately eleven (11) different positions with St. Vincent's organization, starting in 2016. Kinney was passed over each time, with each position being filled by male and/or non-disabled individuals. For example, in January 2019, the Warrick Hospital Administrator Position was available. [Kinney Depo. at pg. 33; **Exhibit 9 – Warrick Hospital Administrator Job Posting** ]. Kinney expressed to Parod via email that she was interested in the position, which was ignored by Parod despite Kinney's multiple attempts to follow-up. [Parod Depo. at pgs. 34-35; **Exhibit 6 – January 3, 2019 email from Kinney to Parod**]. Four months later, on April 17, 2019, Parod agreed to interview Kinney. However, the position was awarded to a lesser qualified male candidate, Marty Mattingly. [Kinney Depo. at pgs 47-48]. Parod testified that he didn't hire Kinney merely because he "didn't find her interview convincing." [Doc. No. 43 at pg. 4 – Defendant's Brief in Support of Motion for Summary Judgment; Parod Depo. at pg. 40].

On February 6, 2019, Kinney made her first internal complaint of gender discrimination in relation to losing her job title and being passed over for a lesser qualified male candidate for the Hospital Administrator position. [**Exhibit 7 – February 6, 2019 emails between Kinney and Edward Daech**]. Kinney made a second internal complaint in September of 2019, alleging gender and disability discrimination in relation to again being passed over for lesser qualified male, non-disabled candidates for several positions. [**Exhibit 11 – September 12, 2019 Written**

**Internal Complaint**].  Kinney was interviewed in connection with her complaints, but St. Vincent made no remedial action, so Kinney filed a Charge of Discrimination with the EEOC. However, the discrimination and harassment continued. [Parod Depo. at pg 45; **Exhibit 13 – September 17, 2019 Parod Interview Notes**; **Exhibit 14 – Determination Letter; Exhibit 14 – December 5, 2019 Kinney EEOC Charge**].

In March of 2020, in response to the COVID-19 pandemic, Joe Impicciche, CEO of Ascension, and John Nalli, CEO of Ascension Indiana, issued a memorandum instructing and encouraging all Leadership employees to work remotely - if at all possible. [Greaney Depo. at pgs. 45-46; **Exhibit 37 – Ilko Depo. at pgs. 63-64**; **Exhibit 18 – Impicciche Email; Exhibit 19 – Nalli Memorandum**].  Beginning on March 17, 2020, Kinney began exclusively working remotely, as the essential functions of her position consisted of administration and could reasonably be performed entirely remotely. [Kinney Depo. at pg. 138, **Exhibit 36 – Bradenstein Depo. at pg. 9**]. While Kinney worked remotely, she remained entirely accessible and communicative to her two department managers and her 120 staff. [Bradenstein Depo. at pgs. 10, 33-34; **Exhibit 38 – Stewart Depo. at pgs. 35, 46**]. Kinney worked remotely without issue until October 23, 2020, when Greaney informed Kinney that she needed to begin working in person. [**Exhibit 21 – November 2, 2020, Kinney's Internal Complaint of Disability Discrimination**]. Greaney was aware and had discussed with Kinney, the issue of wearing a mask, as St. Vincent had enacted a mandatory mask policy and wearing a mask exacerbated Kinney's disabilities. [Greaney Depo. at pg. 49].  Kinney had submitted an accommodation request from her physician stating as much. [**Exhibit 23 – October 30, 2020 Accommodation Request**]. Despite Kinney working remotely without issue for more than six months, Greaney denied Kinney's request for a reasonable accommodation and did not engage in the interactive

6

process with her – to attempt to find such an accommodation. Kinney filed an internal complaint and submitted a more formal request for accommodation via St. Vincent's portal system. [**Exhibit 21 – November 2, 2020, Kinney's Internal Complaint of Disability Discrimination**]. On December 7, 2020, Greaney again denied Kinney's reasonable accommodation and mandated that she work in the office for 40 hours per week without exceptions, even though St. Vincent had extended the remote work directive through April 1, 2021 and – again – Greaney did not engage in the interactive process with Kinney. [Kinney Depo. at pgs. 131-33; **Exhibit 25 – Nalli Memorandum December 11, 2020; Plaintiff's Exhibit 24 – Greaney emails to Kinney and Ilko about Return to Work**].

Kinney, with the assistance of her physician, again requested accommodations, this time in the form of a hybrid schedule, which would allow Kinney to work remotely with the exception of two six-hour days in the office. [**Exhibit 26 – Letter, Accommodation Certification and Job Description January 1, 2021**]. Greaney claimed that he was not aware of this accommodation request. [Greaney Depo. at pgs. 50-51]. In January 2021, Kinney was forced to take intermittent FMLA and PTO due to St. Vincent's denial of her accommodation request. After her FMLA was exhausted, Kinney had no choice but to go on disability leave. [Kinney Depo. at pgs. 156-57]. St. Vincent continued to deny Kinney a reasonable accommodation and failed to engage in the interactive process, and on August 6, 2021, after her disability leave was exhausted, Kinney was constructively discharged.

Kinney filed a second EEOC Charge of Discrimination on March 8, 2021, again alleging gender and disability discrimination and retaliation. [**Exhibit 28 – March 9, 2021 Kinney EEOC Charge**]. Kinney then filed her suit in the Southern District of Indiana. On February 28, 2022, St. Vincent moved the Southern District of Indiana to rule in its favor on the

discrimination and retaliation claims alleged by Kinney. St. Vincent alleged, *inter alia¸* (1) that Kinney did not experience an adverse employment action, (2) that there was no evidence of discrimination in its hiring practices, (3) that Kinney was not a qualified individual with a disability, and (4) that Kinney's accommodation request was not reasonable. [Doc. Nos. 42 and 43].  The Southern District granted St. Vincent's Motion for Summary Judgment on all claims. [Doc. No. 59].

Kinney appealed from the Final Order of the Federal District Court for the Southern District of Indiana dismissing her claims of Failure to Accommodate, Disability Discrimination, Failure to Promote, and Retaliation on September 28, 2022. [Doc. No. 61].

## <u>SUMMARY OF ARGUMENT</u>

The decision of the Federal District Court for the Southern District of Indiana granting St. Vincent's Motion for Summary Judgement sought under Fed. R. Civ. P. 56(a) should be REVERSED where that Court erred in determining that Kinney did not experience an adverse employment action in violation of Title VII and the ADA, and that Appellant did not request a reasonable accommodation because it took inferences in favor of the Appellee-Movant and it ignored relevant facts and evidence.

With respect to her ADA claims, Kinney contends that there is sufficient evidence in the record to allow a reasonable juror to find that St. Vincent discriminated against her and retaliated against her on the basis of her disability. The evidence demonstrates that Kinney is indeed a qualified individual with a disability because she was able to perform the essential functions of her job with or without reasonable accommodation. The District Court ignored the fact that Kinney had effectively worked remotely for six (6) months at the directive of St. Vincent's CEO without issue until her manager changed his mind and decided that Kinney needed to work on site, despite the ongoing COVID pandemic. St. Vincent then failed to engage in the interactive process and denied her reasonable accommodation of working remotely on a hybrid schedule, despite her history of successful remote work. St. Vincent also retaliated against Kinney by constructively discharging her when it failed to accommodate her, which is a qualified adverse employment action.

With respect to her Title VII claims, Kinney contends that there is sufficient evidence in the record for a jury to conclude that St. Vincent discriminated against Kinney by failing to promote her and retaliated against her by constructively discharging her. The evidence demonstrates that St. Vincent's decision not to hire Kinney was pretext because Kinney was

plainly more qualified and experienced than the males hired. As stated above, St. Vincent retaliated against Kinney by constructively discharging her when it failed to accommodate her. The District Court ignored this relevant evidence and viewed facts more favorably to the Appellee-Movant.

## ARGUMENT

### I.     STANDARD OF REVIEW

On a Motion for Summary Judgment, the Court reviews the evidence in the light most favorable to the non-moving party, and the moving party must demonstrate the absence of a genuine issue of material fact or the absence of evidence to support an essential element of the nonmoving party's case in order to survive summary judgment. *Celotex Corp. v. Catrett,* 477 U.S. 317 (1986). Where a Court fails to view the evidence in the light most favorable to the non-moving party and fails to credit evidence that contradicts key factual conclusions, that Court improperly weighs the evidence and improperly resolves disputed issues in the favor of the moving party. *Tolan v. Cotton,* 572 U.S. 650, 657 (2014).

The Court of Appeals reviews a district court's grant of summary judgment *de novo*. *Tindle v. Pulte Home Corp.*, 607 F.3d 494, 495 (7th Cir. 2010).

### II.     KINNEY'S ADA CLAIMS

#### a.  Failure to Accommodate

To establish a *prima facie* case for failure to accommodate, Kinney must show that (1) she is a qualified individual with a disability; (2) her employer was aware of her disability; and (3) her employer failed to reasonably accommodate her disability. *Guzman v. Brown Cnty.*, 884 F.3d 633, 642 (7th Cir. 2018). The District Court held that Kinney is not a qualified individual with a disability because she could not perform the essential functions of her job "with or

without … reasonable accommodation." See *Gratzl v. Office of the Chief Judges of the 12th, 18th, 19th, and 22nd Judicial Circuits*, 601 F.3d 647, 679 (7th Cir. 2010) (holding that a qualified individual with a disability must establish that "she has a disability within the meaning of the ADA, but also that she is qualified for the job, i.e., that she is able to 'perform the essential functions of the job, with or without reasonable accommodation.'"). [Doc. No. 58, pgs. 11-12].

The District Court held that working on site full time was an "essential function" of Kinney's job and ignored the facts presented that prove otherwise. [Doc. No. 58, pgs. 11-12]. In her role as Director, Kinney's duties were primarily administrative while her two department managers, Stewart and Bradenstein, were responsible for directly managing and supervising the 120 department employees. Both managers testified that they were able to effectively communicate with Kinney while she worked remotely, and that Kinney was able to effectively handle her duties and resolve any issues that might have arisen during the six (6) months that she was permitted to work remotely. [Bradenstein Depo. at pgs. 33-34; Stewart Depo. at pgs. 35, 46]. Additionally, Kinney's role did not involve direct patient care. Kinney is not a doctor, nurse, or other clinical profession. Kinney's duties did not include running imaging machines, making diagnoses, or otherwise interacting with patients. Kinney was able to effectively execute the entirety of her duties without issue while working remote for six (6) months, meaning that she could have continued to effectively work remotely if Greaney hadn't merely changed his mind about allowing Kinney to work remotely. Further, St. Vincent made changes to her job description, including requiring Kinney to be the only director required to round with employees that do not report to her, in an effort to exasperate her.

Because Kinney could plainly perform the essential functions of her job remotely, she was qualified for her position and her requested accommodation was reasonable. When Greaney

11

informed Kinney that she was not allowed to work remotely anymore, she requested accommodation that would still afford her two (2) days on site. The District Court stated that Kinney's duties in "providing radiology services requires a physical presence in the hospital." [Doc. No. 58 at pg. 13]. Kinney's role in providing said radiology services is primarily administrative and does not include patient care, which can reasonably be performed remotely. The District Court completely ignores the fact that Kinney successfully worked remotely for six (6) months at the order of St. Vincent's executives.

Because the District Court ignored relevant evidence and took inferences in favor of the movant, it erred in determining that Kinney is not a qualified individual with a disability and that Kinney's accommodation request was not reasonable, and its decision should be reversed.

### b.  Retaliation

To establish a *prima facie* case of ADA retaliation, Kinney must show: (1) that she engaged in statutory protected activity; (2) that her employer took an adverse employment action; and (3) that a causal connection exists between the protected activity and the adverse employment action. *Dickerson v. Bd. Of Trs. Of Comm. College Dist. No. 522*, 657 F.3d 595, 601 (7th Cir. 2011). The Court below held that Kinney did not satisfy her burden because the denial of accommodation is not a qualified adverse employment action. *Moore-Fotso v. Bd. of Educ. of City of Chi.*, 211 F. Supp. 3d 1012, 1037 (N.D. Ill. 2016).

St. Vincent does not dispute that Kinney engaged in protected activity on multiple occasions. On February 6, 2019, Kinney made her first internal complaint of gender discrimination to Edward Daech after she lost her job title, her being maxed out on compensation, and being passed over for the Warrick County Hospital Administrator. [**Exhibit 7 – February 6, 2019 emails between Kinney and Daech**]. On September 12, 2019, Kinney

submitted another internal complaint of gender and disability discrimination. [**Exhibit 11 – September 12, 2019, Written Internal Complaint**]. St. Vincent made no remedial action after these complaints, so on December 5, 2019, Kinney filed a Charge of Discrimination with the Equal Employment Opportunity Commission. [**Exhibit 15 – December 5, 2019 Kinney EEOC Charge**]. Kinney continued to inform Greaney of discrimination and harassment by other males, but still, no remedial action was taken. Kinney then reached out to Jeff Ilko, St. Vincent's Associate Relation Specialist, and informed him of the continuing discrimination and harassment. [Ilko Depo. at pg. 10]. On November 2, 2020, Kinney filed another internal complaint of discrimination and harassment because Greaney refused her accommodations. [**Exhibit 21 – November 2, 2020 Kinney Internal Complaint of Disability Discrimination; Exhibit 23 – October 30, 2020 Accommodation Request**]. After this complaint, Kinney worked closely with Ilko to engage in the interactive process and requested another accommodation via St. Vincent's associate portal, although the request was ultimately denied by Greaney. [Ilko Depo. at pg. 64;**Exhibit 22 – ADA Reasonable Accommodation Policy**; **Exhibit 23 – October 30, 2020 Medical Note**].  Kinney was then forced to take intermittent FMLA leave in order to self-accommodate her disability. [Kinney Depo. at pgs. 156-57]. Kinney then filed a second Charge of Discrimination with the EEOC on March 8, 2021. [**Exhibit 28 – March 8, 2021 Kinney EEOC Charge**].

Kinney experienced an adverse employment action when she was constructively discharged due to St. Vincent's failure to accommodate. St. Vincent was aware that by intentionally denying Kinney's accommodation, her employment would end, either through termination or constructive discharge. Where an individual is forced to choose between their job or their health because an employer fails to accommodate, that is sufficient to state a claim for

constructive discharge. *Blickle v. Ill. Dep't of Children and Family Servs.,* No 12 C 9795, 2013 U.S. Dist. LEXIS 80014, 2013 WL 2467651, at *8-*10 (N.D. Ill. June 7, 2013) (citing *Baldwin v. Board of Trustees of the University of Illinois*, No. 10 C 5569, 2012 U.S. Dist. LEXIS 113071, 2012 WL 3292831, at *3 (N.D. Ill. Aug. 8, 2012); *Sturz v. Wisconsin Department of Corrections*, 642 F. Supp. 2d 881, 891 (W.D. Wis. 2009)). A constructive discharge is a qualified adverse employment action. *EEOC v. University of Chicago Hospitals*, 276 F.3d 236, 331 (7th Cir. 2002); *see also EEOC v. Sears, Roebuck & Co.*, 233 F.3d 432,440 (7th Cir. 2000).

Because the Court erred in determining that Kinney has not identified a qualified adverse action, the Court's below decision should be reversed.

### c. Discrimination

To establish a *prima facie* case of ADA discrimination, Kinney must establish: (1) that she is disabled; (2) that she met her employer's legitimate performance expectations; (3) that she suffered an adverse employment action; and (4) that similarly situated employees without a disability were treated more favorably. *Dickerson,* 657 F.3d at 601. The District Court held that Kinney forfeited this claim because she failed to respond to St. Vincent's argument that she did not experience an adverse employment action. However, Kinney did in fact address that argument by contending that St. Vincent's failure to provide a reasonable accommodation resulted in Kinney's ultimate constructive discharge. [Doc. No. 53 at pgs. 20-23].

Kinney stated, and still holds, that she experienced an adverse employment action when she was constructively discharged due to St. Vincent's failure to accommodate, as discussed above. St. Vincent was aware that by intentionally denying Kinney's accommodation, her employment would end because Kinney would be forced to choose between her job or her health. Where an individual is forced to choose between their job or their health because an

14

employer fails to accommodate, that is sufficient to state a claim for constructive discharge. *Blickle v. Ill. Dep't of Children and Family Servs.,* No 12 C 9795, 2013 U.S. Dist. LEXIS 80014, 2013 WL 2467651, at \*8-\*10 (N.D. Ill. June 7, 2013) (citing *Baldwin v. Board of Trustees of the University of Illinois*, No. 10 C 5569, 2012 U.S. Dist. LEXIS 113071, 2012 WL 3292831, at \*3 (N.D. Ill. Aug. 8, 2012); *Sturz,* 642 F. Supp. 2d at 891). A constructive discharge is a qualified adverse employment action. *EEOC,* 276 F.3d at 331; *see also EEOC,* 233 F.3d at 440.

Because Kinney did address this argument by identifying an eligible adverse employment action, she did not forfeit this claim and the District Court's decision should be reversed.

## III. KINNEY'S TITLE VII CLAIMS

### a. Failure to Promote

To demonstrate a *prima facie* case for failure to promote, Kinney must establish that (1) she was a member of a protected class; (2) she was qualified for the position sought; (3) she was rejected for the position; and (4) the employer promoted someone outside of the protected class who was not better qualified for the position. *Riley v. Elkhart Cmty. Schs.*, 829 F.3d 886, 891-92 (7th Cir. 2016). If Kinney satisfies her prima facie case, St. Vincent must produce evidence of a legitimate non-discriminatory reason for the employment action. *Id*. at 891. If St. Vincent does so, the Kinney must then produce evidence that the reasons given by the employer are merely pretextual. *Id*. at 892. St. Vincent does not dispute that Kinney was a member of a protected class. The District Court held that Kinney was not qualified for the positions she applied for and therefore improperly granted summary judgment in favor of St. Vincent. [Doc. No. 58 at pgs. 16, 17]. However, the District Court ignored a plethora of evidence presented by Kinney that is sufficient for a jury to conclude that she was indeed qualified for the positions and that the failure to promote her was pretext.

15

### i. Warrick County Hospital Administrator

When the Warrick County Hospital Administrator position opened up in January of 2019, Kinney immediately informed Parod of her interest in the position. [Kinney Depo. at pg. 33; Parod Depo. at pgs. 34-35]. Parod eventually agreed to interview Kinney, but ultimately hired Mattingly. [Kinney Depo. at pgs. 47-48]. Mattingly, who had no prior clinical, billing, or federal billing regulation experience, admitted that his only experience was serving as the interim Administrator for a mere five (5) months, which was given to him in a unilateral decision by Parod in order to give Mattingly a leg up in the process of hiring a permanent replacement. [Parod Depo. at pg. 33; Kinney Depo. at pgs. 47-48; **Exhibit 35 – Mattingly Depo. at pgs. 12-14**]. Kinney, by contrast, had over 25 years of experience in the operation of service lines in the healthcare industry, which easily transfers to a hospital administrator position. [Kinney Resume]. The hiring of Mattingly is pretextual. "Evidence of [Mattingly's] qualifications … would [only] serve as evidence of pretext i[s] the differences between [Kinney] and [Mattingly] were 'so favorable to [her] that there can be no dispute among reasonable persons of impartial [judgement] that [she] was clearly better qualified for the position at issue.'" *Hobbs v. City of Chicago*, 573 F.3d 454, 462 (7th Cir. 2009) (quoting *Mlynczak v. Bodman*, 442 F.3d 1050, 1059-60 (7th Cir. 2006)). Here, Kinney's 25 years of relevant experience far outweighs Mattingly's mere 5 months of relevant experience.

Further, the only evidence relied upon by the District Court in making its decision was Greaney's testimony that Kinney didn't interview well. [Doc. No. 58 at pg. 15]. Kinney continuously experienced discrimination and harassment from Greaney because she was a female. Kinney had made multiple complaints about Greaney's treatment of her. It was well established and understood, based on Kinney's report of on-going issues with Greaney, that

Greaney simply did not like Kinney because she is a woman. Therefore, Greaney's testimony that Kinney's interview "wasn't convincing" doesn't hold the weight that the District Court gave it. Conversely, Kinney presented a plethora of evidence demonstrating her qualifications over Mattingly's that was effectively ignored by the District Court. The District Court improperly weighed the evidence and made inferences in favor of the moving party.

### ii. Vice President of Finance

In September of 2019, the Vice President of Finance position opened up. Kinney was again passed over for the position, which was given to a lesser-qualified male, Zach Zirkelbach, despite Kinney already performing a considerable amount of the duties of the position. [Kinney Depo. at pgs. 52-56]. Further, Kinney had held her MBA for 14 years, while Zirkelbach had only held his for a year and half. [Kinney Resume; Kinney Depo. at pgs. 52-56]. Kinney also had over twenty -four (24) years of leadership experience, four (4) years within St. Vincent's organization alone and had supervised more cost centers than any other director employed with St. Vincent, while Zirkelbach had only two (2) years of leadership experience in total. [Kinney Resume; Kinney Depo. at pgs. 52-56]. Again, the evidence is such that a jury could reasonably determine that that St. Vincent's decision to hire Mattingly and Zirkelbach over Kinney was pretext. The District Court ignored this evidence and made inferences in favor of St. Vincent and as such, its decision should be reversed.

### b. Retaliation

The elements of a Title VII Retaliation claim are the same as those of an ADA retaliation claim. *See Dickerson*, 657 F.3d at 601. Again, the District Court held that Kinney did not experience an adverse employment action because failure to accommodate is not a qualified adverse employment action. [Doc. No. 58 at pg. 17]. As discussed above, St. Vincent does not

17

dispute that Kinney engaged in protected activity. Kinney filed at least six (6) complaints, including two (2) EEOC Charges, alleging discrimination, harassment, and retaliation. In fact, St. Vincent may have been motivated to push Kinney out because of her numerous complaints. Further, Kinney experienced an adverse employment action when she was constructively discharged due to St. Vincent's failure to accommodate, which is a qualified adverse employment action. Where an individual is forced to choose between their job or their health because an employer fails to accommodate, that is sufficient to state a claim for constructive discharge. *Blickle v. Ill. Dep't of Children and Family Servs.,* No 12 C 9795, 2013 U.S. Dist. LEXIS 80014, 2013 WL 2467651, at *8-*10 (N.D. Ill. June 7, 2013) (citing *Baldwin v. Board of Trustees of the University of Illinois*, No. 10 C 5569, 2012 U.S. Dist. LEXIS 113071, 2012 WL 3292831, at *3 (N.D. Ill. Aug. 8, 2012); *Sturz*, 642 F. Supp. 2d at 891). A constructive discharge is a qualified adverse employment action. *EEOC*, 276 F.3d at 331; *see also EEOC*, 233 F.3d at 440.

Because Kinney presented evidence sufficient for a jury to conclude that she did in fact experience a qualified adverse employment action, the District Court erred in granting summary judgment in favor of St. Vincent and its decision should be reversed.

## IV. CONCLUSION

The District Court erred in granting summary judgment to the Defendant-Appellee. There was sufficient evidence to allow a jury to conclude that Kinney was discriminated against and retaliated against in violation of the ADA and Title VII. As such, summary judgment on Kinney's claims was not appropriate and the judgment of the District Court should be reversed. Kinney asks that the grant of summary judgment on her claims be revered and remanded to the District Court for a trial on the existing issues of fact.

18

Respectfully submitted,

*/s/Kyle F. Biesecker*
Kyle F. Biesecker
411 Main Street
Evansville, IN 47708
Telephone: (812) 424-1000
Facsimile: (812) 424-1005
Email: kfb@bdlegal.com

*Attorney for Appellant*


## CERTIFICATE OF COMPLIANCE WITH F.R.A.P. 32(A)(5)-(6)

I hereby certify that this brief complies with the typeface and type-style requirements of

Fed. R. App. P. 32(a)(5)-(6), because this brief has been prepared in proportionally-spaced

typeface using Microsoft Word in 12-point Times New Roman.

Dated: <u>December 5, 2022</u>                    */s/ Kyle Biesecker*
                                   Kyle Biesecker, *Counsel of Record*
                                   Attorney for the Appellant

## CERTIFICATE OF COMPLIANCE WITH F.R.A.P. 32(A)(7)

I hereby certify that this brief complies with the type-volume limitations set forth in Rule

32(a)(7)(B) of the Federal Rules of Appellate Procedure, because this brief contains 5,057 words,

excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

Dated: <u>December 5, 2022</u>                  */s/Kyle Biesecker*          
                                                Kyle Biesecker, *Counsel of Record*
                                                  Attorney for the Appellant

## CERTIFICATE OF COMPLIANCE WITH CIRCUIT RULE 30(D)

I hereby certify that this Brief complies with Circuit Rule 30(d) in that all materials

required by Circuit Rule 30(a) and (b) are included in the Short Appendix.

Dated: <u>December 5, 2022</u>                  */s/Kyle Biesecker*          
                                                Kyle Biesecker, *Counsel of Record*
                                                  Attorney for the Appellant

## CERTIFICATE OF SERVICE

I hereby certify that on December 5, 2022, I electronically filed the foregoing with the

Clerk of the Court for the United States Court of Appeals for the Seventh Circuit using the

CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that

service will be accomplished by the CM/ECF system.

                                              */s/Kyle Biesecker*             
                                              Kyle Biesecker, *Counsel of Record*
                                              Attorney for the Appellant

A-1

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
EVANSVILLE DIVISION

ANNA KINNEY,                          )
                                      )
                    Plaintiff,        )
                                      )
            v.                        )          No. 3:20-cv-00226-RLY-MPB
                                      )
ST. MARY'S HEALTH, INC.               )
d/b/a ASCENSION ST. VINCENT           )
EVANSVILLE,                           )
                                      )
                    Defendant.        )

**ENTRY ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Plaintiff Anna Kinney brings this employment discrimination lawsuit against her former employer, St. Mary's Health, Inc. d/b/a Ascension St. Vincent Evansville, alleging numerous claims under the Americans with Disabilities Act ("ADA"), Title VII of the Civil Rights Act of 1964, and the Family Medical Leave Act ("FMLA"). St. Vincent now moves for summary judgment. The court, having read and reviewed the parties' submissions, the designated evidence, and the applicable law, now **GRANTS** St. Vincent's motion.

## I.   Statement of Facts

### A.   Background on Plaintiff's Employment

In May 2016, St. Vincent hired Plaintiff as the Executive Director of Imaging Services for its hospital in Evansville, Indiana. (Filing No. 44-1, Plaintiff Dep. at 9). Plaintiff reported to John Greaney. (*Id*. at 20). In April 2018, St. Vincent restructured the titles of several positions on a company-wide basis. (*Id*. at 88-89; Filing No. 44-3,

Greaney Dep. at 26-27).  As part of this restructuring, St. Vincent Evansville eliminated the title of "Executive Director" and Plaintiff's title was changed from Executive Director of Imaging Services to Director of Radiology.  (Plaintiff Dep. at 11-12, 88; Greaney Dep. at 26-27).  Six employees, including Plaintiff, had their titles changed from "Executive Director" to "Director."  (Plaintiff Dep. at 92-93; Greaney Dep. at 27).  Plaintiff's title change did not affect her job duties, nor did it reduce her compensation.  (Plaintiff Dep. at 94-95; Greaney Dep. at 27).  The individuals who reported to Plaintiff did not change and she continued to report to Greaney.  (Plaintiff Dep. at 94-95).

As the Director of Radiology, Plaintiff was responsible for overseeing and managing the imaging department, which included approximately 120 employees.  (*Id*. at 11-13; Filing No. 44-4, Ilko Dep. at 69 & Ex. 29).  Plaintiff's duties included recruiting and hiring; preparing the department budget and ensuring the department operates within the budget; determining needs for equipment purchases; maintaining the department's facilities and equipment; maintaining compliance with regulatory agencies; monitoring patient care; serving as a liaison between the imaging department and other hospital staff; and other duties set forth in the Director of Radiology job description and as directed by her supervisor.  (Plaintiff Dep. at 11-18; Ilko Dep. Exs. 27, 29).  Suzanne Stewart served as Operations Manager of Imaging Services and reported directly to Plaintiff.  (Filing No. 44-5, Stewart Dep. at 8-24).  Trina Brandenstein served as Supervisor of the CT and MRI departments and reported to Stewart.  (*Id*. at 39; Filing No. 44-6, Brandenstein Dep. at 7).

### B.    Kinney Is Approved for Intermittent FMLA Leave

In 2015, Plaintiff was diagnosed with ADHD and anxiety disorder.  (Plaintiff Dep. at 21-22).  In October 2018, Plaintiff applied for intermittent FMLA for her anxiety.  (*Id.* Dep. at 97-98).  Plaintiff was approved for leave, but testified she only took leave one or two days between October 2018 and December 2020.  (*Id*. at 98-99).

### C.     Kinney Applies for the Warrick Hospital Administrator Position

On January 1, 2019, the Administrator for Warrick Hospital, Kathy Hall, retired. (Filing No. 44-7, Parod Dep. at 29, 43-44).  Dan Parod, President of St. Vincent's Southern Region, announced Hall's retirement on December 21, 2018, and named Marty Mattingly, the Human Resources ("HR") Director, as the interim Administrator while St. Vincent searched for a full-time replacement.  (*Id*. at 11, 32, 43-44).  Parod named Mattingly as interim Administrator because Mattingly volunteered for the role when Parod discussed with him the need to have someone to fill the position on an interim basis.  (*Id*. at 33; Filing No. 44-8, Mattingly Dep. at 15).

Plaintiff applied for the position once it was posted.  (Parod Dep. at 34-35).  Parod worked with a recruiter to identify the qualified candidates based on their applications. (*Id*. at 37).  Parod interviewed the six candidates recommended by the recruiter, which included Plaintiff and Mattingly.  (*Id*. at 37-39).  Parod then selected two finalists— Mattingly and a female candidate who was also a St. Vincent employee at the time—to be interviewed by a board member, physician, and nurse leader for Warrick Hospital. (*Id*. at 37-40).  All three stated they preferred Mattingly in the role, and Parod ultimately selected Mattingly.  (*Id*. at 39-40).  Mattingly met the qualifications for the role, had the experience needed for the position, and demonstrated during his interview an

understanding of what was needed for Warrick Hospital to be successful.  (*Id*. at 41; Mattingly Dep. at 8-11, 13).

Parod testified he did not select Plaintiff as a finalist because he did not find her interview convincing.  (Parod Dep. at 40).  He did not think she demonstrated a positive attitude or a desire to earn the position, nor did she convey insight into what was required for the position.  (*Id*.).

### D.    Plaintiff's Computer Access is Briefly Discontinued

On April 16, 2019, Plaintiff received notice by an auto-generated email that her computer access had been discontinued because her licensing credentials were not up to date.  (Plaintiff Dep. at 38-43).  The auto-generated email was triggered by a clerical error with how the system interpreted the licensing credentials in Plaintiff's record.  (Greaney Dep. at 26; Mattingly Dep. at 7-8).

Plaintiff continued to work after receiving the email.  (Plaintiff Dep. at 40-41).  Greaney gave permission to reactivate Plaintiff's computer access two or three days later, and she did not experience any lapse in pay or benefits.  (*Id*. at 40-41, 43).

### E.    Plaintiff Receives Her 2019 Performance Review

In July or August 2019, Plaintiff was provided her 2019 Leadership Evaluation by Greaney.  (Plaintiff Dep. at 104; Greaney Dep. at 17 & Ex. 33).  Associates are rated in various leadership measurements on a scale of one to four, with a four representing "Exceeds Expectations," three representing "Fully Meets Expectations," two representing "Meets Most Expectations," and one representing "Needs Improvement." (Plaintiff Dep. at 105-06).  Greaney rated Plaintiff either a three or four in every category except two,

and her overall rating was a three.  (Greaney Dep. Ex. 33).  Greaney rated her a two in

the Leadership Effectiveness Measure 1, commenting that Plaintiff had "challenges in

how she interacts with other leaders."  (*Id.*).

### F.    Plaintiff Applies for the Vice President of Finance Position

In September 2019, Plaintiff applied for the Vice President of Finance position.

(Plaintiff Dep. at 52).  The duties include monitoring financial performance, maintaining

financial plans and forecasts, budgeting, planning, and coordinating financial resources,

and serving as liaison on financial matters among executive leadership and management.

(Filing No. 44-12, Meyer Decl. ¶ 12).  The position thus requires education and

experience related to finance and accounting.  (*Id.*).

Plaintiff was not interviewed for the position.  (Plaintiff Dep. at 57).  Plaintiff felt

she was qualified for the position because she made "financial decisions" as a department

head.  (*Id.* at 53).

Zach Zirklebach was selected to fill the position.  (Meyer Decl. ¶ 13).  He holds a

Bachelor of Science degree in Accounting and Finance, a Master of Business

Administration, and is a Certified Public Accountant.  (*Id.* ¶ 15).  Zirklebach has worked

in the finance department at Ascension St. Vincent Evansville for five years, serving as

Senior Director of Finance, Director of Finance, and Senior Financial Analyst.  (*Id.* ¶ 16).

And prior to joining Ascension St. Vincent Evansville, he spent three years as an audit

associate with a public accounting firm.  (*Id.* ¶ 18).

### G.    Plaintiff Submits an Internal Complaint to St. Vincent

On September 12, 2019, Plaintiff submitted a written complaint to St. Vincent alleging "gender discrimination, gender harassment and retaliation."  (Plaintiff Dep. at 111-12; Ilko Dep. Ex. 9).  In the complaint, Plaintiff alleged Parod placed several males in senior positions (including Keith Miller, John Greaney, and Rich Norris) and denied her promotion to Warrick Hospital Administrator; claimed she was forced to handle Greaney's responsibilities; alleged Greaney gave her an unfavorable performance review; stated Greaney spoke to her with an "angry demeanor" during a one-on-one meeting; and claimed Parod "degraded and belittled females" during a meeting.  (Ilko Dep. Ex. 9).

St. Vincent promptly investigated Plaintiff's complaint and interviewed her, Greaney, and Parod.  (*Id*. Exs. 10-12).  St. Vincent did not substantiate Plaintiff's concerns based on its investigation, and on October 9, 2019, sent Plaintiff a letter explaining its findings.  (*Id.* Ex. 13).

### H.     Plaintiff Files a Charge of Discrimination

On December 5, 2019, Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") alleging gender and disability discrimination and retaliation.  (Plaintiff Dep. at 31-32; Ilko Dep. Ex. 5).  Greaney was not aware she had filed the charge.  (Greaney Dep. at 15-16).

### I.     Plaintiff Submits a Written Complaint

On February 26, 2020, Plaintiff submitted a second written complaint to St. Vincent regarding "ongoing harassment and intimidating behavior" by a physicist in Indianapolis named Ed Wroblewski.  (Plaintiff Dep. at 115-16; Brandenstein Dep. at 27 & Ex. 4; Filing No. 44-5, Stewart Dep. at 28-29).  Prior to submitting the written

complaint, Plaintiff had complained to Greaney about interactions she had with

Wroblewski.  (Plaintiff Dep. at 115-16; Greaney Dep. at 13-14, 33-34).

In her written complaint, Plaintiff described a February 2020 meeting with

Wroblewski and Plaintiff's staff, including Stewart and Brandenstein, where Wroblewski

became "extremely argumentative" and was "demeaning and condescending in a hostile

and aggressive manner," and provided a few examples of the comments he made.

(Brandenstein Dep. at 27-28 & Ex. 4).  In subsequent staff meetings, Greaney addressed

Plaintiff's concerns by stressing the importance of respectful communications as

Wroblewski could come off as "blunt."  (Greaney Dep. at 13-14, 33-34).

### J.    Plaintiff Requests an Accommodation

At all times relevant to Plaintiff's request for an accommodation, St. Vincent

employees were required to wear a mask in the hospital, even in offices.  (Plaintiff Dep.

at 139).  From March 17, 2020—the beginning of the COVID-19 pandemic—to July 31,

2020, Plaintiff worked primarily from home; she worked at the hospital two or three

times a month.  (*Id*. at 138; Greaney Dep. at 46; Ilko Dep. at 64).  By August 2020,

Plaintiff began working "a hundred percent remotely" because wearing a mask fueled her

anxiety.  (Plaintiff Dep. at 138-39).  Plaintiff did not tell Greaney that she planned to

work solely from home.  (*Id.* at 137).

Of those who reported to Greaney, Plaintiff was the only one who worked from

home during the pandemic.  (Greaney Dep. at 46).  As time went on, hospital employees

began to complain to Stewart and Brandenstein that Plaintiff was not visible in the

workplace, not supporting them, and not interacting with them.  (Stewart Dep. at 13-14,

32-33; Brandenstein Dep. at 12-13, 33).  Associate Relations Specialist Jeff Ilko, who worked out of St. Louis, received three such complaints from employees.  (Ilko Dep. at 15 & Ex. 20).  Because Plaintiff was not physically present at the hospital, Stewart testified she "was doing everything here and fielding all the phone calls and doing more than [her] load."  (Stewart Dep. at 33).

Plaintiff's health provider, Ashraf Ahmed, M.D., prepared a note on October 29, 2020, stating that Plaintiff was unable to wear a mask because it exacerbates her anxiety and recommending that she work from home, if possible, during the pandemic.  (Plaintiff Dep. at 133; Ilko Dep. at 64 & Ex. 26).  Greaney sent Plaintiff an email dated December 8, 2020, informing her that "[m]aintaining a physical presence was an essential part of being an operational director."  (Ilko Dep. at 65-66 & Ex. 27).  Additionally, St. Vincent requested that Plaintiff follow up with her physician to determine whether a face shield would be an acceptable alternative to a mask.  (Plaintiff Dep. at 140-42).  Plaintiff never responded to this request and never informed St. Vincent whether a face shield would serve as an alternate accommodation.  (*Id.*).

On January 12, 2021, Plaintiff submitted a second doctor's note to St. Vincent regarding her request to work from home.  (Ilko Dep. at 67 & Ex. 28).  This request also sought to allow Plaintiff to work from home "with the exception of two days a week for 6 hours each day."  (*Id.* at 68 & Ex. 28).  The doctor's note also requested that when on site, "she perform as many of her responsibilities as possible in her office using remote technology so that mask wearing is kept to a minimum."  (Ilko Dep. Ex. 28).  St. Vincent

denied this request because Plaintiff's position required her to perform her work duties on site.  (Ilko Dep. at 68).

Between January 2021 and May 2021, Plaintiff worked on site a maximum of two days per week and used FMLA and PTO time for the balance of her work time.  (Plaintiff Dep. at 157).  When on site, she primarily stayed in her office with her door shut.  (*Id.*).  In the interim, on March 8, 2021, she filed another charge of discrimination with the EEOC.  (Filing No. 54-28, EEOC charge).

Plaintiff began a leave of absence in May 2021.  (*Id.*).  On August 1, 2021, Plaintiff informed Greaney she intended to return to work on August 9, 2021, at the end of her scheduled leave.  (Greaney Dep. at 41-42).  Rather than return to work, Plaintiff resigned.  (Filing No. 54-28, EEOC charge).

Additional facts necessary to resolve this motion will be addressed in the Discussion section.

## II.   Summary Judgment Standard

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A genuine issue of material fact exists if there is sufficient evidence from which a reasonable juror could return a verdict in favor of the non-moving party.  *Brown v. Advocate S. Suburban Hosp.*, 700 F.3d 1101, 1104 (7th Cir. 2012).  In evaluating a motion for summary judgment, the court views the evidence in the light most favorable to the nonmoving party.  *Hottenroth v. Vill. of Slinger*, 388 F.3d 1015, 1027 (7th Cir. 2004).

III.    **Discussion**

The court begins its discussion with Plaintiff's ADA claims for disability

discrimination, failure to accommodate, and retaliation.

A.    **ADA Claims**

1.    **Discrimination**

Plaintiff first alleges she was discriminated against because of her disability. A

prima facie case of disability discrimination requires a plaintiff to establish the following

four elements: (1) she is disabled under the ADA; (2) she met her employer's legitimate

employment expectations; (3) she suffered an adverse employment action; and (4)

similarly situated employees without a disability were treated more favorably.  *Dickerson*

*v. Bd. of Trs. of Comm. College Dist. No. 522*, 657 F.3d 595, 601 (7th Cir. 2011)

(citations omitted).

St. Vincent argues Plaintiff cannot show, as a matter of law, that she was subjected

to an adverse employment action.  Plaintiff did not respond to this argument.  Plaintiff's

failure to respond results in waiver or forfeiture of the claim.  *See Alioto v. Town of*

*Lisbon,* 651 F.3d 715, 721 (7th Cir. 2011) (noting the court applies "[the forfeiture] rule

where a party fails to develop arguments related to a discrete issue"); *Arlin–Golf, LLC v.*

*Vill. of Arlington Heights,* 631 F.3d 818, 822 (7th Cir. 2011) (where the party "cited no

relevant legal authority to the district court to support the proposition . . . the argument is

waived"); *Bonte v. U.S. Bank, N.A.,* 624 F.3d 461, 466 (7th Cir. 2010) ("Failure to

respond to an argument . . . results in waiver.").  St. Vincent is therefore entitled to

summary judgment on Plaintiff's disability discrimination claim.

### 2.    Failure to Accommodate

Next, Plaintiff alleges St. Vincent failed to accommodate her disability by denying her request to work on site two days a week for six hours a day.

To establish a prima facie case for failure to accommodate, a plaintiff must show that: (1) she is a qualified individual with a disability; (2) her employer was aware of her disability; and (3) her employer failed to reasonably accommodate her disability. *Guzman v. Brown Cnty.*, 884 F.3d 633, 642 (7th Cir. 2018). St. Vincent argues Plaintiff was not a "qualified individual" with a disability and her requested accommodation was not reasonable.

A "qualified individual with a disability" is defined by the ADA to mean "an individual with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8). In other words, Plaintiff must establish "not only that she has a disability within the meaning of the ADA, but also that she is qualified for the job, i.e., that she is able to 'perform the essential functions of the job, with or without reasonable accommodation.'" *Gratzl v. Office of the Chief Judges of the 12th, 18th, 19th and 22nd Judicial Circuits*, 601 F.3d 674, 679 (7th Cir. 2010) (quoting 42 U.S.C. § 12111(8)).

This claim, therefore, turns on whether performing Plaintiff's work duties on site was an essential function of Plaintiff's position as Director of Radiology. The court "presume[s] that an employer's understanding of the essential functions of the job is correct, unless the plaintiff offers sufficient evidence to the contrary." *Id.* (citing *Basith v. Cook Cnty.*, 241 F.3d 919, 928 (7th Cir. 2001)).

11

St. Vincent maintains that working on site full time was an essential function of Plaintiff's position.  Plaintiff disagrees, explaining that during quarantine, she and other hospital employees were allowed to work from home and that she was able to effectively handle her duties remotely.  Plaintiff may have been given leeway to work from home at the beginning of the pandemic, but the undisputed evidence reflects that being present on site was a necessary function of her position.

As Director of Radiology, Plaintiff was charged with overseeing all aspects of the hospital's imaging department.  Part of her responsibilities included supervising approximately 120 department employees; developing, implementing, and monitoring plans for patient care services; and acting as a liaison between radiologists, radiology residents, radiology staff, and other department leaders.  (Ilko Dep. Ex. 29).  Given the many complaints brought by employees and the burden her absence placed on Stewart, Plaintiff has not satisfied her burden to show that these duties can be effectively performed through remote technology.  Because Plaintiff was not able or willing to be physically present on site full-time—an essential function of her job—she was not qualified for her leadership role.

Another way of looking at this issue is whether the accommodation Plaintiff sought was a reasonable accommodation.  Plaintiff bears the burden of establishing that she can perform the essential functions of her job "with or without a reasonable accommodation." *Gratzl*, 601 F.3d at 680.

Plaintiff's requested accommodation, that she be allowed to work on site only two days a week for six hours a day, was not reasonable.  Plaintiff's subordinates were

working at the hospital, as were her peers, throughout the pandemic.  Providing radiology services requires a physical presence in the hospital.  And providing radiology services requires the presence of the department's leadership to ensure the department is functioning properly.  For these reasons, St. Vincent is entitled to summary judgment on Plaintiff's failure to accommodate claim.

### 3.     ADA Retaliation

Lastly, Plaintiff alleges St. Vincent retaliated against her for making complaints of discrimination by denying her request for an accommodation.

A retaliation claim under the ADA requires a plaintiff to establish that: (1) she engaged in statutorily protected activity; (2) her employer took an adverse employment action; and (3) a causal connection exists between the protected activity and the adverse action. *Dickerson*, 657 F.3d at 601.  The critical issue is whether Plaintiff can satisfy the second element of her prima facie case.

Plaintiff submits the adverse action she experienced was the denial of an accommodation.  This proposed adverse action is unavailing as a matter of law.  "A 'failure to accommodate' cannot serve as an adverse action for an ADA retaliation claim because it merely restates an underlying failure to accommodate claim." *Moore-Fotso v. Bd. of Educ. of City of Chi.*, 211 F. Supp. 3d 1012, 1037 (N.D. Ill. 2016) (citing cases). And here, because Plaintiff was not entitled under the law to a reasonable accommodation, the denial of an accommodation cannot support a retaliation claim. *Supinski v. United Parcel Serv., Inc.*, No. 3:CV–06–0793, 2009 WL 113796, at *8 (M.D. Pa. 2009) ("If an employee is not entitled to a reasonable accommodation under the law,

the denial of the requested accommodation simply cannot support a retaliation

claim.").  St. Vincent is therefore entitled to summary judgment on Plaintiff's ADA

retaliation claim.

### B.    Title VII Claims

The court now turns to Plaintiff's Title VII claims for gender discrimination and

hostile work environment.

### 1.    Failure to Promote

Plaintiff alleges St. Vincent failed to promote her to the Warrick Hospital

Administrator and Vice President of Finance positions because of her gender.

To demonstrate a prima facie case for failure to promote, a plaintiff must establish

that: (1) she was a member of a protected class; (2) she was qualified for the position

sought; (3) she was rejected for the position; and (4) the employer promoted someone

outside of the protected class who was not better qualified for the position.  *Riley v.*

*Elkhart Cmty. Schs.*, 829 F.3d 886, 891-92 (7th Cir. 2016).  If the plaintiff satisfies her

prima facie case, the defendant must produce evidence of a legitimate, nondiscriminatory

reason for the employment action.  *Id.* at 891.  If the defendant does so, the plaintiff must

then produce evidence that the reasons proffered by the defendant are merely pretexual.

*Id.* at 892.

### a.    Warrick Hospital Administrator Position

Parod interviewed Plaintiff and five other candidates, including Plaintiff, for the

position.  He narrowed the field down to Mattingly and a female St. Vincent employee.

Mattingly and the other candidate were then interviewed by multiple stakeholders from

Warrick Hospital, who unanimously agreed that Mattingly was the best candidate for the position.  He had the experience—he worked as the interim Administrator for five months prior to being hired—and during his interview, he demonstrated an understanding of what was needed for Warrick Hospital to be successful.

Plaintiff asserts she was more qualified than Mattingly for the position.  She says that "Mattingly did not have any prior clinical experience, billing experience, or any experience of federal regulations for billing."  (Filing No. 53, Pl.'s Resp. at 29).  She, on the other hand, "has over 25 years of experience in the operation of service lines in the healthcare industry."  (*Id.*).  Plaintiff fails to explain, however, why experience in these areas was particularly relevant to the hiring decision for Warrick Administrator or made her any more qualified for the position than Mattingly.  Without more, Plaintiff fails to establish all elements of her prima facie case.

Even if Plaintiff satisfied her prima facie case, Plaintiff cannot show that St. Vincent's non-discriminatory reason for hiring Mattingly is pretextual.  Again, her only argument is based on Mattingly's qualifications.  "Evidence of [Mattingly's] qualifications would only serve as evidence of pretext if the differences between [her] and [Mattingly] were 'so favorable to [her] that there can be no dispute among reasonable persons of impartial judgment that [she] was clearly better qualified for the position at issue.'"  *Hobbs v. City of Chicago*, 573 F.3d 454, 462 (7th Cir. 2009) (quoting *Mlynczak v. Bodman*, 442 F.3d 1050, 1059-60 (7th Cir. 2006)).  "[Plaintiff's] mere assertion that she is better qualified will not do the trick."  *Id.*  As Plaintiff's claim is based on her mere

assertion that she is better qualified than Mattingly, St. Vincent is entitled to summary

judgment on Plaintiff's failure to promote claim.

### b.      Vice President of Finance

Plaintiff applied, but was not interviewed for, the Vice President of Finance

position.  Zirklebach was awarded the position.

As explained previously, the duties of the Vice President of Finance position

required a background in finance and accounting.  Zirklebach holds a Bachelor of

Science degree in Accounting and Finance and an MBA.  He is also a CPA.  He worked

his way up through the ranks of the finance department over five years and had direct

experience in finance and accounting at St. Vincent.

Plaintiff claims she was better qualified for the position than Zirklebach.  In

support of her position, she says she "was already performing a considerable amount of

the job duties associated with the position."  (Pl.'s Resp. at 29).  But her own deposition

belies that statement.  Plaintiff testified her role as Director of Radiology involved

making decisions that had a financial impact on St. Vincent, but she conceded this was

not unique to her and would be true of any department head at St. Vincent.  (Plaintiff

Dep. at 56).

Relying on her resume, Plaintiff also claims to have more leadership experience

than Zirklebach.  According to her resume, she previously held the following positions:

Vice President of Operations at Upstream Strategies in Jersey City, New Jersey; Director

of Ambulatory Services at Medical Specialists of the Pam Beaches in Lake Worth,

Florida; Director of Outpatient Services for Holy Spirit Hospital & Health System in

Camp Hill, Pennsylvania; and Director of Imaging for Coventry Cardiology Associates in Phillipsburg, New Jersey.  While Plaintiff's resume is strong, it does not include experience in finance and accounting.  Accordingly, St. Vincent is entitled to summary judgment on Plaintiff's failure to promote claim.

### 2.      Retaliation

Plaintiff alleges St. Vincent "retaliated against [her] and denied her a reasonable accommodation . . . due to her complaints of gender discrimination."  (Pl.'s Resp. at 30).

The elements of a Title VII retaliation claim are the same as those for an ADA retaliation claim.  *Dickerson*, 657 F.3d at 601.  Thus, a plaintiff must establish that:  (1) she engaged in statutorily protected activity; (2) her employer took an adverse employment action; and (3) a causal connection exists between the protected activity and the adverse action.  *Castro v. DeVry Univ., Inc.*, 786 F.3d 559, 564 (7th Cir. 2015).

Like her ADA retaliation claim, Plaintiff's Title VII retaliation claim must be dismissed, as the denial of an accommodation cannot support a retaliation claim.  *Moore-Fotso*, 211 F. Supp. 3d at 1037.  Therefore, St. Vincent is entitled to summary judgment on Plaintiff's Title VII retaliation claim.

### 3.      Hostile Work Environment

Plaintiff's last Title VII claim alleges she was subjected to a hostile work environment based on her gender.

To survive summary judgment on a hostile work environment claim, a plaintiff must demonstrate that: "[her] workplace was both subjectively and objectively offensive; (2) [her] sex was the cause of the harassment; (3) the harassment was severe or pervasive;

17

and (4) there is a basis for employer liability." *Lord v. High Voltage Software, Inc.*, 839

F.3d 556, 561 (7th Cir. 2016).  To be actionable, a plaintiff must show, based on the

totality of the circumstances, that the harassment is "so severe or pervasive as to alter the

conditions of employment and create an abusive working environment." *Mannie v.*

*Potter*, 394 F.3d 977, 982 (7th Cir. 2005) (quoting *Faragher v. City of Boca Raton*, 524

U.S. 775, 786 (1998)).

An objectively hostile work environment is one that a reasonable person would

find hostile or abusive.  *Id.*  In determining whether a plaintiff has met this standard, a

court must consider all the circumstances, including "the frequency of the discriminatory

conduct; its severity; whether it is physically threatening or humiliating, or a mere

offensive utterance; and whether it unreasonably interferes with an employee's work

performance." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23 (1993). "'[S]imple teasing,'

offhand comments, and isolated incidents (unless extremely serious) will not amount to

discriminatory changes in the 'terms and conditions of employment.'" *Faragher*, 524

U.S. at 788.

Plaintiff points to seven workplace incidents in support of her claim.  She says (1)

she "was stripped of her job title and made Director of Radiology/Imaging Services"; (2)

she was subjected to "harassment from other males such as Ed Wrobelski"; (3) she

received a "poor performance review for leadership by Greaney"; (4) her "computer

access [was] cut-off due to an alleged clerical error by Mattingly"; and (5) she was

"pass[ed] over for promotions"; (6) she was "called a 'bitch' by a male subordinate—Greg

Fleck"; and (7) "a male management member cut and pasted female employees' heads onto inappropriate photos and displayed them at a meeting."  (Pl.'s Resp. at 26-27).

Turning to Plaintiff's change in title, the evidence shows that every executive at Ascension had his or her job title changed from executive director to director.  (Greaney Dep. at 27).  Although the executives in Evansville all happened to be women, (*id.*), she did not suffer an adverse employment action because her job duties did not change and her compensation remained the same, (*id.*).

Plaintiff's complaints regarding co-worker Wroblewski concern workplace disputes.  (Brandenstein Dep. Ex. 4).  She alleged that in a February 2020 meeting, he "was extremely argumentative and went on a tirade of unsupported claims and disparaging remarks directed mainly towards [her]."  (*Id.* at 2).  She further alleged Wroblewski's "verbal assault" included his statement that "My staff and I will not open service tickets" and "I'm the RSO.  I'm the only one that is able to make decisions regarding processes."  (*Id.*).  As none of the complaints relate to Plaintiff's gender, they cannot form the basis of a gender harassment claim.  *Oncale v. Sundowner Offshore Serv., Inc.*, 523 U.S. 75, 79-80 (1998) (Title VII proscribes discrimination based on one's gender); *Johnson v. Hondo, Inc*., 125 F.3d 408, 415 (7th Cir. 1997) ("We ask whether . . . the victim was singled out because of his or her gender, and if so, whether the treatment was so severe and pervasive as to alter the conditions of the victim's employment in a significant way.").

Her complaints regarding a poor performance review on her leadership effectiveness in 2019, her inability to access her computer for two or three days due to a

clerical error, and St. Vincent's failure to promote her fare no better.  None of these

incidents were based on her gender and they did not result in an adverse employment

action.  Plaintiff received an overall "meets expectations" in her 2019 performance

evaluation; she continued to work and did not lose any pay or benefits when her

computer access was cut off; and, for the reasons previously explained, she was not better

qualified than the men who obtained the positions of Warrick Hospital Administrator and

Vice President of Finance.

Plaintiff next references a complaint she made about Greg Fleck, a nurse

practitioner in the cardiology department, in May 2021.  (Plaintiff Dep. at 121; Ilko Dep.

Ex. 32).  Like her complaint about Wroblewski, this complaint focuses on workplace

issues but also includes an allegation that Fleck called her a "bitch."  (Ilko Dep. Ex. 32).

Plaintiff testified she was not present when Fleck allegedly made the comment; rather,

she learned about it from a co-worker.  (Plaintiff Dep. at 120).

As an initial matter, the alleged slur by Fleck is double hearsay.  It was

purportedly made to another employee who in turn reported it to Plaintiff.  Evidence of

the slur is therefore inadmissible.  *Singh v. Town of Mt. Pleasant*, 172 F. App'x 675, 681-

82 (7th Cir. 2006) (refusing to consider unsupported hearsay comment allegedly made

about the plaintiff's accent in evaluating a hostile work environment claim).

Even if it were admissible, the use of the slur must be placed in context.

*Passananti v. Cook Cnty.*, 689 F.3d 655, 666 (7th Cir. 2012).  Plaintiff's May 2021

typewritten complaint spans an entire page.  She complains about how Fleck made

disparaging remarks about her to cardiologists and other members of leadership regarding

20

her competency, performance, and leadership ability, and how Fleck "cut [her] out of the communication loop." (Ilko Dep. Ex. 32). Near the end of the page, she states that "Mr. Fleck has used gender slurs specifically directed at me, referring to me as a 'bitch.'" (*Id.*).

Taken in the context of her entire complaint, the use of the term "bitch" appears to reflect personal animosity arising out of their working relationship rather than with a belief that Plaintiff is not entitled to equal treatment because she is female. *Galloway v. Gen. Motors Serv. Parts Operations*, 78 F.3d 1164, 1168 (7th Cir. 1996) (finding use of the term "sick bitch" was motivated more by personal dislike than with gender). Moreover, a single comment made outside Plaintiff's presence is insufficient to make a reasonable person believe she has been discriminated against because of her sex. *Id.*

Plaintiff also references an occasion when, during a leadership meeting, a manager photoshopped images of females in leadership positions and showed them in a slide presentation. (Ilko Dep. Ex. 9). In one, a female executive's face was superimposed on a picture of a female at a baseball game holding a sign that read "Still drunk from last weekend." (*Id.*). In another, a female executive's face was superimposed on a woman wearing a bikini waterskiing. (*Id.*). While the employee who made these slides acted inappropriately and unprofessionally, the slides do not amount to the type of severe or pervasive conduct that meets the standard for actionable harassment. *See Baskerville v. Culligan Int'l Co.*, 50 F.3d 428, 430 (7th Cir.1995) (stating that actionable sexual harassment may include exposure to pornographic pictures); *EEOC v. Int'l Profit Assocs., Inc.*, 654 F. Supp. 2d 767, 806 (N.D. Ill. 2009) (finding calendar of semi-naked women in an area of the workplace exposed to others was "not so shocking or

egregious as to render [plaintiff's] workplace objectively hostile").  It falls more along the lines of "simple teasing."

For these reasons, St. Vincent is entitled to summary judgment on Plaintiff's hostile work environment claim.

### C.    FMLA Retaliation

Plaintiff argues her use of FMLA leave was a motivating factor in St. Vincent's decision to deny her a reasonable accommodation under the ADA.

An FMLA retaliation claim has the same three elements as a Title VII retaliation claim: (1) the plaintiff engaged in statutorily protected activity; (2) she suffered an adverse employment action; and (3) there is a causal connection between the protected activity and the adverse action.  *Burnett v. FLW, Inc.*, 472 F.3d 471, 481 (7th Cir. 2006).

Plaintiff's FMLA retaliation claim cannot survive for two reasons.  First, the adverse action of which she complains is the failure to accommodate.  But the failure to accommodate is not an adverse employment action in this case because she was not entitled to the accommodation she sought.  Second, even if it were an adverse employment action, Plaintiff applied for intermittent FMLA leave in October 2018, long before her request for accommodation in January 2021.  An over two-year span between the protected activity and the adverse action is too long to infer a link between the two.  *Carter v. Chi. State Univ.*, 778 F.3d 651, 658 (7th Cir. 2015) (seven months between professor's return from FMLA leave and university decision not to appoint him to department chair was too long); *Feldman v. Olin Corp.,* 692 F.3d 748, 757 (7th Cir.

2012) (eight months between plaintiff's latest discrimination filing and suspension was too long).

## IV.    Conclusion

Because Plaintiff has failed to raise a genuine issue of material fact on her claims arising under the ADA, Title VII, and the FMLA, St. Vincent's Motion for Summary Judgment (Filing No. 42) is **GRANTED**.  Final judgment shall issue forthwith.


**SO ORDERED** this 31st day of August 2022.


RICHARD L. YOUNG, JUDGE
United States District Court
Southern District of Indiana


Distributed Electronically to Registered Counsel of Record.

A-2

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
EVANSVILLE DIVISION

| | | |
|---|---|---|
| ANNA KINNEY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 3:20-cv-00226-RLY-MPB |
| | ) | |
| ST. MARY'S HEALTH, INC. | ) | |
| d/b/a ST. VINCENT EVANSVILLE, | ) | |
| | ) | |
| Defendant. | ) | |

## FINAL JUDGMENT

The court, having granted Defendant's Motion for Summary Judgment, now enters

judgment in favor of Defendant and against Plaintiff.

**SO ORDERED** this 31st day of August 2022.

RICHARD L. YOUNG, JUDGE
United States District Court
Southern District of Indiana

Roger Sharpe, Clerk
United States District Court

By: Deputy Clerk

Distributed Electronically to Registered Counsel of Record.

1

A-3



Neutral
As of: December 4, 2022 2:13 PM Z

# *Blickle v. Ill. Dep't of Children & Family Servs.*

United States District Court for the Northern District of Illinois, Eastern Division

June 7, 2013, Decided; June 7, 2013, Filed

No. 12 C 9795

**Reporter**

2013 U.S. Dist. LEXIS 80014 *; 28 Am. Disabilities Cas. (BNA) 5; 15 Accom. Disabilities Dec. (CCH) P15-189; 2013 WL 2467651

JACQUELINE B. BLICKLE, Plaintiff, v. ILLINOIS DEPARTMENT OF CHILDREN AND FAMILY SERVICES, Defendants.

**Subsequent History:** Summary judgment granted by, Summary judgment denied by *Blickle v. Ill. Dep't of Children & Family Servs., 2015 U.S. Dist. LEXIS 129882 (N.D. Ill., Sept. 28, 2015)*

## Core Terms

accommodation, allegations, disability, constructive discharge, hostile, hostile work environment, retaliation, disparate treatment, motion to dismiss, work environment, conditions, adverse employment action, prohibits, resign

**Counsel:** **[*1]** For Jacqueline B. Blickle, Plaintiff: David G. Sigale, Law Firm of David G. Sigale, P.C., Glen Ellyn, IL.

For Illinois Department of Children and Family Services, Defendant: S. Ann Walls, LEAD ATTORNEY, Office of the Illinois Attorney General, Chicago, IL.

**Judges:** Virginia M. Kendall, United States District Court Judge.

**Opinion by:** Virginia M. Kendall

## Opinion

### MEMORANDUM OPINION AND ORDER

Plaintiff Jacqueline Blickle filed a complaint against Defendant Illinois Department of Children and Family Services ("DCFS") alleging violations of the Americans with Disabilities Act, *42 U.S.C. § 12112*, and the Age Discrimination in Employment Act, *29 U.S.C. § 623*.

DCFS has moved pursuant to *Federal Rule of Civil Procedure 12(b)(6)* to dismiss certain claims alleged in Blickle's Complaint. For the reasons set forth below, the motion is granted in part and denied in part.

### BACKGROUND

The following facts are taken from Blickle's Complaint and are assumed to be true for purposes of the Motion to Dismiss. *See Voelker v. Porsche Cars North America, Inc., 353 F.3d 516, 520 (7th Cir. 2003)*; *Murphy v. Walker, 51 F.3d 714, 717 (7th Cir. 1995)*. DCFS hired Blickle in 1995 to serve as a Child Welfare Nurse Specialist. (*See* Complaint, Doc. 1 at **[*2]** ¶ 10.) Her home office was in Aurora, Illinois; however, her job required her to travel to other DCFS field offices in Kankakee, Joliet and Glen Ellyn, Illinois. (*Id.*) Blickle suffered from arthritis in her back. (*Id.* at ¶ 12.) The arthritis was so severe by September 2009 that it was disabling. (*Id.*) However, Blickle continued to complete her job responsibilities for DCFS, including traveling to the other field offices. (*Id.*) In March 2010, Blickle requested in writing for DCFS to accommodate her arthritic condition by transferring her home office to Glen Ellyn, which was located closer to where she received therapy for her condition in Woodridge, Illinois. (*Id.* at ¶ 13.) This accommodation would allow Blickle to work a full day for DCFS and then attend therapy sessions after work. (*Id.*) The accommodation would not have resulted in any change in Blickle's daily activities or her ability to fulfill any responsibilities at the various DCFS field offices. (*Id.*)

DCFS did not respond to Blickle's written request for accommodation. (*Id.* at ¶ 14.) In April 2010, Edgar Hernandez, DCFS' Statewide Clinical Manager and head of the Aurora field office, came to Blickle's cubicle and threw down **[*3]** her request for accommodation on her desk. (*Id.* at ¶ 15.) Hernandez told Blickle that it appeared due to her medical history that she may not

be able to do her job. (*Id.*) Blickle understood this statement to be a threat to drop her accommodation request or be fired. (*Id.*)

In mid-April 2010, Blickle attended a monthly DCFS Nurse's Meeting in Chicago, Illinois. (*Id.* at ¶ 16.) During a break in the meeting, Blickle's supervisors, Jerrilyn Pearson-Minor and Jane Kelly, called her to the cafeteria. (*Id.*) Minor and Kelly told Blickle that DCFS had received her accommodation request but stated that DCFS required more documentation from her before it could be processed. (*Id.*) Subsequently, Blickle contacted the State of Illinois about her request. (*Id.*) She was told that her request for accommodation required no further documentation and that she should not respond any further to her supervisor's demands. (*Id.*) However, Blickle's request for accommodation was never granted. (*Id.* at ¶ 17.) Blickle retired in December 2010. (*Id.* at ¶ 18.) She was 70 years old. (*Id.*)

After exhausting her administrative remedies, Blickle filed this lawsuit in which she asserts claims under both the ADA and the ADEA. **[*4]** Specifically, she alleges that DCFS violated the ADA because: (1) it failed to accommodate her disability; (2) it constructively discharged her because of her disability; (3) it created a hostile work environment; and (4) it retaliated against Blickle for requesting an accommodation. Alternatively, Blickle alleges that DCFS violated the ADEA because: (1) she was constructively discharged due to her age; (2) it created a hostile work environment for Blickle due to her age; and (3) it retaliated against her because of her complaints about the discrimination against her based on her age. DCFS concedes that Blickle has adequately alleged a failure to accommodate claim. However, it moves to dismiss the remainder of her claims pursuant to *Rule 12(b)(6)*.

### LEGAL STANDARD

When considering a motion to dismiss under *Rule 12(b)(6)* the Court accepts as true all of the well-pled facts alleged in the complaint and construes all reasonable inferences in favor of the nonmoving party. *See Killingsworth v. HSBC Bank Nevada, N.A., 507 F.3d 614, 619 (7th Cir. 2007)* (citing *Savory v. Lyons, 469 F.3d 667, 670 (7th Cir. 2006))*; *accord Murphy, 51 F.3d at 717.* To state a claim upon which relief can be granted **[*5]** a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." *Fed. R. Civ. P. 8(a)(!)*. "Detailed factual allegations" are not required, but the plaintiff

must allege facts that, when "accepted as true . . . state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009)* (quoting *Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)*) (internal quotations omitted). In analyzing whether a complaint meets this standard the "reviewing court [must] draw on its judicial experience and common sense." *Iqbal, 556 U.S. at 678*. When the factual allegations are well-pled the Court assumes their veracity and then determines if they plausibly give rise to an entitlement to relief. *See id. at 679*. A claim has facial plausibility when the factual content pled in the complaint allows the Court to draw a reasonable inference that the defendant is liable for the misconduct alleged. *See id. at 678*.

### DISCUSSION

### I. The ADA Claims

The ADA prohibits an employer from discriminating against "a qualified individual with a disability because of the disability of such individual..." *42 U.S.C. § 12112*. The ADA prohibits an employer: **[*6]** (1) from making an adverse employment decision, such as termination or denial of benefits, when that decision is based on a qualified individual's actual or perceived disability; or (2) from not making a reasonable accommodation to the known physical or mental limitations of an otherwise qualified individual with a disability. *See 42 U.S.C. §§ 12112(a), 12112(b)(3)-(5)*; *see also Weigel v. Target Stores, 122 F.3d 461, 463-64 (7th Cir. 1997)*. Disparate treatment and failure to accommodate claims are analyzed differently. *See Timmons v. GMC, 469 F.3d 1122, 1126 (7th Cir. 2006)* (internal citations omitted).

In analyzing a disparate treatment claim, a court should employ the *McDonnell Douglas* [1] burden-shifting framework. *See id; see also Weigel, 122 F.3d at 464*. Under this framework, a plaintiff may establish disparate treatment by either direct or indirect means. *See Timmons, 469 F.3d at 1126*. If a plaintiff attempts to prove her case by indirect means, she must establish a prima facie case of discrimination. *See id.* This means the plaintiff must present evidence adequate to create an inference that an employment decision was based on

---

[1] *See McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973)*.

an illegal, discriminatory criterion. *See id.* If she [*7] succeeds in doing so, the defendant must articulate a legitimate, non-discriminatory reason for the disparate treatment. *See id.* To overcome a sufficient showing by the defendant, a plaintiff must then establish that this proffered reason is really a pretext for discrimination. *See id.* For pleading purposes however, a plaintiff states a disparate treatment claim if they allege facts sufficient to make it plausible they can establish a prima facie case of discrimination.

## A. The Constructive Discharge Claim

DCFS contends that Blickle fails to state a claim for disparate treatment because she failed to sufficiently allege an adverse employment action. However, Blickle alleges that DCFS forced her to resign, *i.e.,* constructively discharged her, because she was disabled. Constructive discharge, like actual discharge, is a materially adverse employment action. *See EEOC v. University of Chicago Hospitals, 276 F.3d 326, 331 (7th Cir. 2002).* To prove constructive discharge, a plaintiff "must show that she was forced to resign because her working conditions, from the standpoint of the reasonable employee, had become unbearable." *Id.* (citing [*8] *Lindale v. Tokheim Corp., 145 F.3d 953, 955 (7th Cir. 1998));* *see also EEOC v. Sears, Roebuck & Co., 233 F.3d 432, 440 (7th Cir. 2000)* (holding that to prove constructive discharge, a plaintiff must show that her working conditions were made so intolerable that a reasonable person in her position would be forced to resign, rather than stay on the job while seeking redress).

In this case, Blickle alleges that she suffered from a debilitating arthritic back condition that required therapy. In order to complete a full work day and visit her back therapist, Blickle needed to work out of the Glen Ellyn office, instead of the Aurora office. DCFS refused to transfer her to the Glen Ellyn office even though it would not have affected Blickle's day-to-day duties. Because she could not see her back therapist and perform her job while working from the Aurora office, Blickle retired. While Blickle may be unable to eventually prove that DCFS constructively discharged her due to her disability, her allegations are sufficient to withstand a motion to dismiss. A jury could find that a reasonable person would resign instead of enduring severe pain to perform his or her job. *See, e.g., Baldwin v. Board of Trustees of the University of Illinois, No. 10 C 5569, 2012 U.S. Dist. LEXIS 11307*1, 2012 WL 3292731, at *3 (N.D. Ill. Aug. 8, 2012)* [*9] (finding plaintiff sufficiently

alleged constructive discharge for a claim under the Family Medical Leave Act where employer denied requests for accommodation because "if [plaintiff] were required to endure extreme pain or forego lifesaving treatment because of the defendant's refusal to allow her to see her doctor, a jury might reasonably find that, under those circumstances, a reasonable person would have resigned"); *Sturz v. Wisconsin Department of Corrections, 642 F. Supp. 2d 881, 891 (W.D. Wis. 2009)* (finding that "[a] reasonable jury could find that plaintiff's conditions were objectively intolerable as a result of defendant's failure to accommodate her...[because] [a]n employee should not have to choose between her job and hear health.").

DCFS' reliance on the Seventh Circuit's decision in *EEOC v. Sears, Roebuck & Co.* is misplaced. There, the Seventh Circuit concluded that denials for requests for accommodation did not rise to the level necessary to establish a constructive discharge. However, that was because the plaintiff requested the employer to accommodate her schedule so that she could attend "Bingo night" and clean her house. *See 233 F.3d at 441.* Not allegations that she [*10] was denied the ability to visit her doctor to relieve her debilitating pain. Accordingly, *Sears* does not control here.

Additionally, DCFS' argument that the Complaint fails to show that Blickle's working conditions had become unbearable because she was willing to continue her employment if she was assigned to the Glen Ellyn office misses the point. Blickle alleges that she was constructively discharged due to the failure to accommodate her disability. The transfer to Glen Ellyn would have accommodated that disability. It was the pain that resulted from being unable to see her doctor due to the location of her home office that led to her retirement. This is sufficient to state a constructive discharge claim.

## B. Hostile Work Environment Claim

Blickle also alleges that she was subjected to a hostile work environment in violation of the ADA. A hostile work environment is one where a plaintiff was subject to harassment "so severe and pervasive as to alter the conditions of the victim's employment and create an abusive working environment." *Faragher v. City of Boca Raton, 524 U.S. 775, 786, 118 S. Ct. 2275, 141 L. Ed. 2d 662 (1998)* (internal citations and quotations omitted). To establish a hostile work environment claim, "a [*11] plaintiff must show that his or her work

environment was both subjectively and objectively hostile." *Silk v. City of Chicago, 194 F.3d 788, 804 (7th Cir. 1999)*. To be objectively hostile, a reasonable person must find the environment abusive. *See id.* (citing *Harris v. Forklift Systems, Inc., 510 U.S. 17, 21, 114 S. Ct. 367, 126 L. Ed. 2d 295 (1993))*. In determining whether a workplace is objectively hostile, a court should consider "the frequency of the discriminatory conduct; its severity; whether it was physically threatening or humiliating; or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Id.* (quoting *Harris, 510 U.S. at 21*.)).

The crux of Blickle's complaint focuses on the alleged failure to accommodate her disability not that she was subjected to a hostile work environment. Blickle's only allegation regarding alleged abusive behavior in the workplace is her allegation that her supervisor, Edgar Hernandez, threw Blickle's request for accommodation on her desk. This allegation alone is insufficient to plausibly plead that Blickle was subjected to a work environment permeated by discriminatory intimidation, ridicule or insult. *See Ford v. Minteq Shapes & Servs., Inc., 587 F.3d 845, 847-48 (7th Cir. 2009)* **[*12]** (holding that occasional comments do not create a hostile work environment); *see also, e.g., Jones v. United Airlines, No. 11 C 6374, 2012 U.S. Dist. LEXIS 176408, 2012 WL 216741, at *8 (N.D. Ill. Dec. 13, 2012)* ("a single incident is not sufficient to create a hostile working environment"). Therefore, she has failed to sufficiently plead a hostile environment claim and this claim must be dismissed.

### C. Retaliation Claim

DCFS also moves to dismiss Blickle's ADA retaliation claim. *Section 12203* of the ADA prohibits employers from discriminating against a party because that party engaged in an activity protected by the ADA. *See 42 U.S.C. § 12203(a)*; *see also Kersting v. Wal-Mart Stores, Inc., 250 F.3d 1109, 1117 (7th Cir. 2001)*. This section also prohibits an employer from coercing, threatening or interfering with an employee's exercise of his or her rights under the ADA. *See 42 U.S.C. § 12203(b)*. To establish a claim for retaliation using the indirect method of proof, a plaintiff must offer evidence that: (1) she engaged in a statutorily protected activity; (2) she suffered an adverse action; and (3) a causal link exists between the protected activity and the adverse action. *See Kersting, 250 F.3d at 1117*. Here, DCFS **[*13]** only contests whether Blickle has sufficiently

alleged the adverse employment action element of her retaliation claim. However, as described above, Blickle has sufficiently alleged an adverse employment action because she alleged that she was constructively discharged as a result of receiving no accommodation for her disability. Therefore, DCFS' motion is denied with respect to this claim.

### II. The ADEA Claims

The ADEA prohibits an employer from terminating an individual or otherwise discriminating against an individual with respect to his or her compensation, terms, conditions, or privileges of employment because of the individual's age. *29 U.S.C. § 623*. To establish a violation of the ADEA, an employee must show that age actually motivated an adverse employment action. *See Van Antwerp v. City of Peoria, 627 F.3d 295, 297 (7th Cir. 2010)*; *Faas v. Sears, Roebuck & Co., 532 F.3d 633, 641 (7th Cir. 2008)*. In other words, "age must have played a role in the employer's decision-making process and had a determinative influence on the outcome." *Van Antwerp, 627 F.3d at 297* (citing *Schuster v. Lucent Techs., Inc., 327 F.3d 569, 573 (7th Cir. 2003))*. Like a disparate treatment ADA claim, an employee **[*14]** may prove an ADEA claim either directly or indirectly. The indirect method uses the same *McDonnell-Douglas* framework described above.

In the alternative to her ADA claims, Blickle alleges that she was constructively discharged because of her age, she was subjected to a hostile work environment due to her age and that she was retaliated against for engaging in protected activity under the ADEA. However, her Complaint is devoid of any allegations that plausibly suggest she was discriminated against on the basis of her age. Blickle's ADEA claim is composed of the following allegations: (1) Blickle is 70 years old (Doc. at ¶ 18); and (2) that "[p]rior to Blickle's termination, other similarly-situated employees at DCFS, each substantially younger than Blickle, were properly and promptly granted their home office transfer requests." (*Id.* at ¶ 39.) This is insufficient to state a claim for a violation of the ADEA. While Blickle does not need to allege the who, what, when, where and how of her ADEA claim as the defense suggests, she must provide more than a bare recitation of the elements. *See Iqbal, 129 S.Ct. at 1951*. Outside of pleading the fact that she is seventy years old, Blickle provides **[*15]** no factual allegations to support her ADEA claim. This is insufficient under *Twombly* and *Iqbal*. Additionally, Blickle's ADEA hostile work environment claim fails for

the same reasons as her ADA hostile work environment claim.


**<u>CONCLUSION</u>**

For the reasons set forth above, the motion to dismiss is granted in part and denied in part. The motion is denied with respect to Blickle's claims for constructive discharge and retaliation under the ADA. The motion is granted with respect to Blickle's claim of hostile work environment under the ADA and all of her claims under the ADEA. Those claims are dismissed without prejudice. Blickle is granted leave to amend her complaint with respect to those claims. Any amended pleading must be filed within fourteen days of the entry of this Order.

/s/ Virginia M. Kendall

Virginia M. Kendall

United States District Court Judge

Northern District of Illinois

Date: June 7, 2013

---

**End of Document**