No. 22-2740

---

## UNITED STATES COURT OF APPEALS
## FOR THE SEVENTH CIRCUIT

---

ANNA KINNEY,
Plaintiff-Appellant,

v.

ST. MARY'S HEALTH, INC.
d/b/a ASCENSION ST. VINCENT EVANSVILLE, INC.,
Defendant-Appellee.

---

Appeal from the United States District Court
For the Southern District of Indiana, Evansville Division
Case No. 3:20-cv-00226-RLY-MPB
The Honorable District Court Judge Richard L. Young
The Honorable Magistrate Judge Matthew P. Brookman

---

BRIEF OF THE DEFENDANT-APPELLEE, ST. MARY'S HEALTH, INC.
d/b/a ASCENSION ST. VINCENT EVANSVILLE, INC.

---

JACKSON LEWIS, P.C.
Michael W. Padgett
211 North Pennsylvania Street, Suite 1700
Indianapolis, Indiana 46204
Tel: (317) 489-6930
Fax: (317) 489-6931
Email: Michael.Padgett@jacksonlewis.com

Attorney for Defendant-Appellee,
St. Mary's Health, Inc., d/b/a Ascension St.
Vincent, Inc.

SEVENTH CIRCUIT RULE 26.1 DISCLOSURE STATEMENT

Appellate Court No: **22-2740**

Short Caption: **Ann Kinney v. St. Mary's Health, Inc., d/b/a Ascension St. Vincent Evansville, Inc.**

(1)     The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P. 26.1 by completing the item #3): **St. Mary's Health, Inc., d/b/a Ascension St. Vincent Evansville, Inc.**

(2)     The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court: **Jackson Lewis P.C.**

(3)     If the party or amicus is a corporation:

(i) Identify all its parent corporations, if any: **St. Vincent Health, Inc. and Ascension Health, Inc.**

(ii) list any publicly held company that owns 10% or more of the party's or amicus' stock: **None**

Attorney's Signature: <u>s/ Michael W. Padgett</u>     Date: <u>January 4, 2023</u>

Attorney's Printed Name: **Michael W. Padgett**

Are you *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d)? **Yes**.

Address: **Jackson Lewis P.C., 211 North Pennsylvania Street, Suite 1700, Indianapolis, Indiana 46204**

Phone Number: **317-489-6930** / Fax Number: **317-489-6931**

E-mail Address: **Michael.Padgett@jacksonlewis.com**

## Table of Contents

Seventh Circuit Rule 26.1 Disclosure Statement ..............................................i

Table of Authorities ....................................................................... iii-iv

Jurisdictional Statement ...................................................................... 1

Statement of the Case ......................................................................... 1

Summary of Argument ......................................................................... 9

Argument ................................................................................. 10

I.  Standard of Review                                                              10

II.  The District Court properly granted St. Vincent's motion for summary judgment as to Kinney's ADA claims.                                                              10

A.  The failure to accommodate claim fails.                                           10

B.  The ADA retaliation claim fails.                                                  15

C.  The ADA discrimination claim fails.                                               17

III.  The District Court properly granted St. Vincent's motion for summary judgment as to Kinney's Title VII claims.                                                       18

A.  The Title VII failure to promote claim fails.                                      18

1.  Warrick Hospital Administrator                                                    18

2.  VP Finance, St. Mary's Health System                                              20

B.  The Title VII retaliation claim fails.                                             23

Conclusion ............................................................................... 24

Certificate of Compliance with Type-Volume Limit ................................... 25

Certificate of Service ...................................................................... 26

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Aregood v. Givaudan Flavors Corp.*,
  904 F.3d 475 (7th Cir. 2018) ................................................................. 10

*Bilinski v. Am. Airlines, Inc.*,
  928 F.3d 565 (7th Cir. 2019) ................................................................. 11

*Credeur v. Louisiana*,
  860 F.3d 785 (5th Cir. 2017) ................................................................. 11

*Disckerson v. Bd. of Trs. of Comm. College Dist. No. 522*,
  657 F.3d 595 (7th Cir. 2011) ........................................................... 15, 17

*Filipovic v. K & R Express Sys., Inc.*,
  176 F.3d 390 (7th Cir. 1999) ................................................................. 17

*Gratzl v. Office of the Chief Judges of the 12th, 18th, 19th and 22nd
  Judicial Circuits*,
  601 F.3d 674 (7th Cir. 2010) ................................................................. 10

*Hobbs v. City of Chicago*,
  573 F.3d 454 (7th Cir. 2009) ............................................................. 4, 20

*Maffeo v. Butler Univ.*,
  U.S. Dist. LEXIS 28648 (S.D. Ind. February 20, 2018) ........................ 11

*Moore-Fotso v. Bd. of Educ. Of Chicago*,
  211 F. Supp. 3d 1012 (N.D. Ill. 2016) ................................................... 16

*Rauen v. U.S. Tobacco Mfg. L.P.*,
  319 F.3d 891 (7th Circ. 2003) ............................................................... 11

*Sauzek v. Exxon Coal USA*,
  202 F.3d 913 (7th Cir. 2000) ................................................................. 17

**Federal Statutes**

42 U.S.C. 12111(8) ................................................................................... 11

42 U.S.C. § 12111(8) ............................................................................ 9, 10

**Rules**

Fed. R. App. P. 32(a)(7) ................................................................................. 25

Fed. R. App. P. 32(a)(7)(B)(iii) .................................................................... 25

Fed. R. Civ. P. 56(a) ..................................................................................... 10

## JURISDICTIONAL STATEMENT

The jurisdictional statement of Plaintiff-Appellant Anna Kinney ("Kinney") is complete and correct.

## STATEMENT OF THE CASE[1]

Defendant-Appellee, St. Mary's Health, Inc., d/b/a Ascension St. Vincent Evansville, Inc. ("St. Vincent"), disputes the following statements in Kinney's Statement of the Case[2]:

- "*Kinney's new title came with a decreased compensation bracket, which effectively barred her from advancing in the position because it capped her out for pay.*" (Appellant's Brief, p. 4.)

Kinney's compensation was not reduced because of the change in job title from Executive Director to Director. (R. 44-1, pp. 94:17-95:4; R. 44-3, p. 27:13-16.) Additionally, Kinney was still eligible for pay increases paid as a lump sum rather than as part of salary. (R. 44-1, pp. 95:7-96:5.) There is no record evidence cited for the conclusion that the change in title "effectively barred [Kinney] from advancing in the position."

---

[1] Citations to the record on appeal appear throughout as "(R. _xx_ .)," with xx representing the district court docket number. Page numbers cited for deposition transcripts are to the pages of the actual deposition, not the filing number at the top of the page. Page numbers cited for deposition exhibits, which do not have separate pagination, are to the filing numbers at the top of the page. For instance, for a deposition exhibit, (R. 34-2, p. 13) refers to page 13 of docket number 34.

[2] Kinney's Statement of the Case goes beyond a statement of the facts and includes legal argument. Legal arguments not specifically addressed in this response to Kinney's Statement of the Case are addressed in the argument section of this brief.

- *"St. Vincent was aware of Kinney's disabilities because she self-reported them on St. Vincent's personnel portal. Further, Kinney obtained intermittent FMLA with St. Vincent in the Fall of 2018 due to her anxiety, which her supervisor, John Greaney, was aware of."* (Appellant's Brief, p. 4.)

Kinney testified she reported her disability through a portal in 2017 but did not identify anyone at St. Vincent who accessed this information in the alleged portal. (R. 44-1, pp. 23:8-24:1.) Further, Kinney testified she did not personally disclose her disability to anyone at St. Vincent, including Greaney. (*Id.*) Finally, an employee's manager is not told the medical reason when an employee takes FMLA leave. (R. 44-1, pp. 99:18-100:5.)

- *"In fact, her performance was such, her standards became the nationwide productivity standards for all Imaging Services throughout the organization. Dan Parod, St. Vincent's President of the Southwest Region, acknowledged that Kinney was eligible for a transfer or promotion within St. Vincent based on her excellent performance."* (Appellant's Brief, p. 4.)

Parod's deposition testimony does not support these assertions of fact. When asked if Kinney developed the productivity standard for imaging services throughout Ascension, Parod testified, "Yeah. That, I don't know." (R. 44-7, p. 23:21-24.) Parod also confirmed that Kinney remained eligible for a transfer or promotion, but he did not state that was based on her "excellent performance." (R. 44-7, p. 57, 12-20.)

- "*Despite Kinney's excellent performance and acknowledgement from Parod, Greaney evaluated Kinney during her annual performance review as 'needing improvement,' presumably to disqualify her from promotional opportunities.*" (Appellant's Brief, p. 5.)

The record does not support the assertion that Kinney's performance was excellent or that Parod acknowledged excellent performance. Additionally, Greaney did not evaluate Kinney as "needing improvement" in the annual performance review cited in Appellant's Statement of the Case. To the contrary, Greaney gave Kinney an overall rating of "Fully Meets Expectations" and did not give Kinney a "Needs Improvement" in any category on the annual performance review. (R. 54-8.) Finally, the annual performance review did not disqualify Kinney from promotional opportunities. (R. 44-3, pp. 31:21-32:2.)

- "*Kinney expressed to Parod via email that she was interested in the [Warrick Hospital Administrator] position, which was ignored by Parod despite Kinney's multiple attempts to follow up.*" (Appellant's Brief, p. 5.)

The record cited in Appellant's Brief shows Kinney contacted Parod one time to express interest in the Warrick Hospital Administrator position. There is no evidence Kinney made "multiple attempts to follow up" with Parod regarding the position.

- "*However, the [Warrick Hospital Administrator] position was awarded to a lesser qualified candidate, Marty Mattingly.*" (Appellant's Brief, p. 5.)

Kinney cites her own deposition testimony in support of the assertion Mattingly was less qualified for the position than her. As an initial matter, the portion of Kinney's deposition testimony cited makes no such assertion and provides no evidence that Mattingly was lesser qualified. Moreover, evidence of Mattingly's qualifications would only serve as evidence of discrimination if the differences between Kinney and Mattingly were "so favorable to [her] that there can be no dispute among reasonable persons of impartial judgment that [she] was clearly better qualified or the position at issue." *Hobbs v. City of Chicago,* 573 F.3d 454, 462 (7th Cir. 2009). "[Kinney's] mere assertion that she is better qualified will not do the trick." *Id.*

In filling the Warrick Hospital Administrator position, Parod worked with a recruiter to identify qualified candidates based on their applications. (R.44-7, p. 37:3-25.) Parod then interviewed the six candidates the recruiter believed should be considered, which included Kinney and Mattingly. (*Id.*, pp. 37:14-39:7.) Parod then selected two finalists – Mattingly and a female candidate who was also a St. Vincent employee at the time – to be interviewed by a board member, physician, and nurse leader for Warrick Hospital. (*Id.*, pp. 37:14-40:6.) All three stated they preferred Mattingly in the role, and Parod ultimately selected Mattingly. (*Id.*, pp. 39:17-40:15.) Mattingly met the qualifications for the role, had the experience needed for the position, and demonstrated during his interview an understanding of what was needed for Warrick Hospital to be successful. (*Id.*, 41:3-17; R. 44-8, pp. 8:24-10:19, 11:9-13:19.)

4

Parod did not select Kinney as a finalist because he did not find her interview convincing. (R. 44-7, p., 40:16-17.) He did not feel like she demonstrated a positive attitude or a desire to earn the position, nor did she convey insight into what was required for the position. (*Id.*, 40:14-21.)

- "*Parod testified that he didn't hire Kinney merely because he 'didn't find her interview convincing.'*" (Appellant's Brief, p. 5.)

This misstates Parod's testimony. Parod testified he did not find Kinney's interview convincing because she did not demonstrate a positive attitude and a desire to earn the position, nor did she "convey a lot if insight into what was required for the position." (R. 44-7, p. 40:14-21.) Parod further testified that Mattingly had operational experience in his previous roles, demonstrated an understanding of what was needed to make Warrick Hospital successful, including developing relationships with the community, staff, and medical staff. (R. 44-7, p. 41:3-13.)

- "*On February 6, 2019, Kinney made her first internal complaint of gender discrimination in relation to losing her job title and being passed over for a lesser qualified male candidate for the Hospital Administrator position.*" (Appellant's Brief, p. 5.)

The e-mail cited in support of this assertion does not include a complaint of gender discrimination and does not include a complaint about being passed over for the Warrick Hospital Administrator position (in fact, the e-mail exchange occurred before the position was filled).

- "*Beginning on March 17, 2020, Kinney began exclusively working remotely, as the essential functions of her position consisted of*

*administration and could reasonably be performed entirely remotely.*"
(Appellant's Brief, p. 6.)

The portions of the record cited in Appellant's Statement of the Case do not support this assertion. Additionally, the essential functions of Kinney's position could not be performed remotely.

Kinney was responsible for overseeing and managing the imaging department, which included approximately 120 employees. (R. 44-1, pp. 11:23-13:16; R. 44-4, p. 69:3-13, R. 44-4, Ex. 29.) Kinney's duties included recruiting and hiring; preparing the department budget and ensuring the department operates within the budget; determining needs for equipment purchases; maintaining the department facilities and equipment; maintaining compliance with regulatory agencies; monitoring patient care; serving as a liaison between the imaging department and other hospital staff; and other duties set forth in the Director of Imaging Services job description and as directed by her supervisor. (R. 44-1, pp. 11:23-18:10; R. 44-4, Ex. 27, 29.)

In August 2020, Kinney simply stopped reporting to work on site and began working from home full time. (R. 44-1, p. 137:10-139:5.) Kinney did not tell Greaney she intended to stop coming to work in August 2020. (R. 44-1, p. 137:10-22.)

On October 21, 2020, an employee made a Values Line complaint that Kinney was working from home while all others in a director-level position were working on site. (R. 44-4, p. 55:13-22; R. 44-4, Ex. 20.) This complaint was investigated by Jeff Ilko, Associate Relations Specialist. (R. 44-4, pp. 10:17-20, 55:13-24.) This was one of three complaints Ilko received from employees regarding Kinney working remotely. (R. 44-4, p. 15:4-8.) Kinney's direct report, Suzanne Stewart, received numerous

complaints from employees about Kinney working remotely and all staff were concerned about Kinney's lack of presence and support. (R. 44-5, pp. 32:23-33:8.) In fact, most of the staff complained to Stewart about Kinney not being visible in the workplace, not supporting them, and not interacting with them. (R. 44-5, pp. 13:20-14:2.)

A department supervisor, Trina Brandenstein, likewise received complaints from employees that they did not feel supported by Kinney because she was not present at work like they were. (R. 44-6, pp. 12:21-13:4; 33:8-14.) All of Greaney's direct reports other than Kinney worked on site during the pandemic. (R. 44-4, p. 46:6-9.) Stewart's workload increased due to Kinney's absence such that she was "doing everything here and fielding all the phone calls and doing more than my load." (R. 44-5, p. 33:14-17.)

On October 23, 2020, Greaney informed Kinney via telephone she needed to return to working on site.  (*See* R. 54-21.)  Kinney's health care provider, Ashraf Ahmed, M.D., prepared a note on October 29, 2020, stating that Kinney was unable to wear a mask due because it exacerbates her anxiety and recommending that she work from home during the pandemic. (R. 44-1, p. 133:9-23; R. 44-4, p. 64:3-15; R. 44-4, Ex. 26.)  At all times relevant to Kinney's request to work from home, St. Vincent employees have been required to wear a mask due to the pandemic. (R. 44-1, pp. 134:22-135:2:R. 44-3, p. 49:10-17.) This was the first doctor's note Kinney submitted to St. Vincent regarding a request to work from home. (R. 44-1, p. 133:16-23.) On December 8, 2020, Greaney sent an email to Kinney informing her that working on site was an essential function of her position. (R. 44-4, pp. 65:6-66:16; R. 44-4, Ex. 27.)

Additionally, St. Vincent requested that Kinney follow up with her physician to determine whether a face shield would be an acceptable alternative to a mask. (R. 44-1, pp. 140:22-142:2.) Kinney never responded to this request and never informed St. Vincent whether a face shield would serve as an alternate accommodation. (*Id.*)

On January 12, 2021, Kinney submitted a second doctor's note to St. Vincent regarding her request to work from home. (R. 44-4, p. 67:12-22; R. 44-4, Ex. 28.) This request also sought to allow Kinney to work from home, except for two days per week, for six hours on each of those days working on site. (R. 44-4, p. 68:3-8; R. 44-4, Ex. 28.) The January 12, 2021, doctor's note also sought to allow Kinney to work remotely from her office as much as possible during the time she was on site. (*Id.*) St. Vincent denied this request because Kinney's position required that her duties be performed on site. (R. 44-4, p. 68:13-18.)

Kinney began a leave of absence in May 2021. (R. 44-2, p. 157:16-20.) On August 1, 2021, Kinney informed Greaney she intended to return to work on August 9, 2021, at the end of her scheduled leave. (R. 44-3, pp. 41:24-42:6.) Rather than return to work on August 9, 2021, Kinney voluntarily resigned her employment. (R. 44-2, p. 158:6-9.)

- "*Kinney worked remotely without issue until October 23, 2020, when Greaney informed Kinney that she needed to begin working in person.*" "*Despite Kinney working remotely without issue for more than six months, Greany denied Kinney's request for a reasonable accommodation and did not engage in the interactive process with her – to attempt to find such an accommodation.*" (Appellant's Brief, pp. 6-7.)

8

The portions of the record cited in Appellant's Statement of the Case do not support the assertion that Kinney worked remotely without issue, that her request for accommodation was reasonable, or that Greaney failed to engage in the interactive process. And as noted above, the undisputed record evidence shows Kinney's remote work caused significant issues in the workplace and made her requested accommodation unreasonable. Additionally, the undisputed record evidence shows Kinney failed to engage in the interactive process with St. Vincent.

## SUMMARY OF ARGUMENT

The District Court properly granted St. Vincent's motion for summary judgment as to Kinney's claims. As to her ADA claims, Kinney was not a qualified individual with a disability under 42 U.S.C. § 12111(8) because she was unable to perform the essential functions of her position with or without a reasonable accommodation. Additionally, Kinney's fails to carry her burden of proof to show her requested accommodation of remote work was reasonable. Kinney's ADA discrimination and retaliation claims fail because denial of an accommodation cannot serve as an adverse employment action to support the claims and, even if it could, Kinney fails to make out a *prima facie* case of discrimination or retaliation.

As to Kinney's Title VII failure to promote claim, Kinney offers only her own opinion that she was better qualified than the candidates hired, which is not sufficient. The Title VII retaliation claim fails for the same reasons as the ADA retaliation claim.

9

ARGUMENT

## I. Standard of Review

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine issue of material fact exists if there is sufficient evidence from which a reasonable juror could return a verdict in favor of the nonmoving party. *Aregood v. Givaudan Flavors Corp.,* 904 F.3d 475, 482 (7th Cir. 2018). The nonmovant bears the burden of demonstrating that a genuine issue of material fact exists. *Id.* The Court of Appeals reviews the district court's grant of summary judgment *de novo. Id.*

## II. The District Court properly granted St. Vincent's motion for summary judgment as to Kinney's ADA claims.

Kinney was not a qualified individual with a disability under 42 U.S.C. § 12111(8) because she was unable to perform the essential functions of her position with or without a reasonable accommodation. Additionally, Kinney's requested accommodation of remote work was not reasonable.

### A. The failure to accommodate claim fails.

To establish she is a qualified individual with a disability, Kinney must show she is able to perform the essential functions of her position with or without a reasonable accommodation. Courts presume that an employer's understanding of the essential functions of the job is correct unless the plaintiff offers sufficient evidence to the contrary. *Gratzl v. Office of the Chief Judges of the 12th, 18th, 19th and 22nd Judicial Circuits,* 601 F.3d 674, 679 (7th Cir. 2010). If an employer has prepared a

written description, it shall be considered evidence of the essential functions of the job. 42 U.S.C. 12111(8); *Maffeo v. Butler Univ.,* U.S. Dist. LEXIS 28648, *22 (S.D. Ind. February 20, 2018). An employee cannot create a genuine dispute of material fact by asserting her own opinion of her essential job functions. *Id.* at 27 ("She cannot create a genuine issue of material fact by simply asserting her generic opinion that she could have performed her work from home."; *Credeur v. Louisiana,* 860 F.3d 785, 793 (5th Cir. 2017) ("'An employee's unsupported testimony that she could perform her job functions from home' does not create a genuine dispute of fact to preclude summary judgment.")

Additionally, as the Seventh Circuit has noted, "[T]here is a general consensus among the courts … that regular work-site attendance is an essential function of most jobs. [*citing Credeur.*] The position's nature will often require face-to-face collaboration. *Bilinski v. Am. Airlines, Inc.,* 928 F.3d 565, 573 (7th Cir. 2019). "[M]ost jobs require the kind of teamwork, personal interaction, and supervision that simply cannot be had in a home office situation." *Rauen v. U.S. Tobacco Mfg. L.P.,* 319 F.3d 891, 896 (7th Circ. 2003).

Before getting to Kinney's request to work from home, Kinney cannot show a failure to accommodate because she failed to properly engage in the interactive process. Kinney insisted she must work from home because she was unable to comply with St. Vincent's mask requirement, implemented due to the pandemic. St. Vincent requested that Kinney follow up with her physician to determine whether a face shield would be an acceptable alternative to a mask. Kinney never responded to this

request and never informed St. Vincent whether a face shield would serve as an alternate accommodation. She simply insisted on working from home.

Regarding her request to work from home, Kinney was in charge of overseeing all aspects of the hospital's imaging department. Approximately 120 department employees reported to her. Kinney's requested accommodation was that she be permitted to oversee the imaging department from home. This was later revised to overseeing the department from home except for 12 hours per week. Kinney sought to be the only department employee working from home while the 120 employees who reported to her worked on site.

St. Vincent denied the request because the essential functions of the Director of Imaging Services position cannot be performed from home. The position directs, plans, administers, monitors and evaluates the delivery of imaging services to patients. (R. 44-4, Ex 29.) It is simply not possible to perform these duties without setting foot in the hospital where the imaging services are delivered to patients. The Director cannot "develop, implement, and monitor" plans for patient care services while never observing the delivery of those services. (*Id.*) Nor can the Director serve as an "effective liaison between the radiologists, radiology residents, chairperson, radiology staff and other department leaders" without interacting with those individuals. (*Id.*)

As Kinney was informed by Greaney, "Maintaining a physical presence is an essential part of being an operational leader." (R. 44-4, Ex. 27.) And "[r]ounding is a core part of operational leadership and contributes to associate engagement, physical engagement, and patient experience." (*Id.*) "Technology cannot fully replace the value

12

of in person interaction." (*Id.*) "What is being asked of you is consistent with what your peers are doing in other operational departments, it's what your team leads are doing in your absence." (*Id.*)

Greaney's assessment was confirmed by the 120 employees who reported to Kinney. Kinney's direct report and a department supervisor, Stewart and Brandenstein, received numerous complaints from employees about Kinney working remotely. In fact, most of the staff complained about Kinney not being present in the workplace. And Stewart had to take up the slack resulting from Kinney's absence such that she was doing more than her normal workload. Three employees filed Values Line complaints that Kinney was working from home while everyone else was working on site. There was clearly a consensus that Kinney needed to be on site to perform the essential functions of her position.

While Kinney argues she did not provide direct patient care, providing radiology services requires a physical presence in the hospital and further requires the presence of the department's leadership to ensure the department is functioning properly. Because Kinney could only work from home (except for 12 hours per week), she was not a qualified individual with a disability and her requested accommodation was not reasonable.

Kinney also argues she was able to work from home because her "duties were primarily administrative." (appellant's Brief, p. 11.) However, she makes no effort to detail any of the alleged administrative duties she could perform from home or whether those duties leave out any of the essential functions of her Director of Imaging Services position. Kinney also makes no effort to show why "administrative

13

duties" can be performed from home. Kinney further argues that Stewart and Brandenstein were responsible for managing and supervising the department's 120 employees, which begs the question of why the Director of Imaging Services position was even needed. Clearly, the job entailed more than "administrative duties" while others managed the department.

Kinney's claim that Stewart and Brandenstein testified that Kinney was able to "effectively handle her duties" while working from home misstates their testimony. Brandenstein testified she did not know if Kinney could perform her duties remotely and the question would have to be answered by someone up the supervisory chain. (R. 44-6, pp. 35:22-37:4.) Stewart specifically testified Kinney's job duties required her to be physically present at the workplace every day. (R. 44-5, p. 45:13-16.) Kinney is the only person who has opined that she could perform her job duties from home.

Kinney argues she was able to perform her duties without issue while working remotely and could have continued to do so if "Greaney hadn't merely changed his mind about allowing Kinney to work remotely." As an initial matter, Kinney is the only person of the opinion that she was able to perform her duties without issue. As discussed above, nearly every employee in her department disagreed with that assessment. Moreover, Greaney did not change his mind about allowing Kinney to work remotely. She simply began working from home full time in August 2020 without informing Greaney. He was unaware she was working from home full time until the complaints began to bubble up from Kinney's employees.

Finally, Kinney argues without citation to any record evidence that St. Vincent made changes to her job description, including requiring her to perform duties not

assigned to other directors.  Apart from being unsupported by record evidence, Kinney fails to explain why giving her such duties while not requiring the same duties of other directors is in any way inappropriate.

Kinney was not a qualified individual with a disability, and she has not offered evidence to show her requested accommodation was reasonable.  The District Court properly granted summary judgment to St. Vincent on this claim.

### B. The ADA retaliation claim fails.

To establish an ADA retaliation claim, Kinney must show: (1) she engaged in statutorily protected activity; (2) her employer took an adverse employment action; and (3) a causal connection exists between the protected activity and the adverse action.  *Diskerson v. Bd. of Trs. of Comm. College Dist. No. 522,* 657 F.3d 595, 601 (7th Cir. 2011).

Plaintiff asserts the adverse employment action at issue is the denial of her request for accommodation.  However, this proposed adverse action is unavailing as a matter of law.

> A "failure to accommodate" cannot serve as an adverse action for an ADA retaliation claim because it merely restates an underlying failure to accommodate claim. See, *e.g., Avet v. Dart*, 2016 U.S. Dist. LEXIS 24198, 2016 WL 757961, at *6 (N.D. Ill. Feb. 26, 2016) (granting summary judgment because non-accommodation "cannot do 'double duty' as evidence of an adverse employment action"); *Pack v. Ill. Dep't of Healthcare & Family Servs.*, 2014 U.S. Dist. LEXIS 101552, 2014 WL 3704917, at *4 (N.D. Ill. July 25, 2014) (dismissing plaintiff's ADA retaliation claim based on denials of accommodations as "duplicative"); *Imbody v. C & R Plating Corp.*, 2009 U.S. Dist. LEXIS 4779, 2009 WL 196251, at *4 (N.D. Ind. Jan. 23, 2009) (dismissing ADA retaliation claim because "the mere denial of the accommodation claimed to violate the substantive anti-discrimination provisions of the ADA simply cannot support a retaliation claim"). As other courts have explained, such allegations are "circular" because "the denial of such

requests can hardly be considered unlawful retaliation for the act of requesting them." *Sheahan v. Dart*, 2015 U.S. Dist. LEXIS 55026, 2015 WL 1915246, at *6 (N.D. Ill. Apr. 23, 2015). Otherwise, "almost every failure to accommodate claim would be simultaneously a retaliation claim" and "it was unlikely Congress' intent to provide plaintiffs redundant relief for the same conduct when it established the anti-retaliation provisions of the ADA." *Pagliaroni v. Daimler Chrysler Corp.*, 2006 U.S. Dist. LEXIS 66720, 2006 WL 2668157, at *9 (E.D. Wis. Sept. 15, 2006) (granting summary judgment).

*Moore-Fotso v. Bd. of Educ. Of Chicago,* 211 F. Supp. 3d 1012, 1037-1038 (N.D. Ill. 2016).

Kinney cites cases addressing constructive discharge outside the context of an ADA retaliation claim. The cases are not on point to show that failure to accommodate can serve as the adverse employment action to support a retaliation claim. Additionally, because Kinney was not entitled by law to her requested accommodation, the denial of the accommodation cannot support a retaliation claim.

Even if failure to accommodate could serve as an adverse employment action for a retaliation claim, St. Vincent remains entitled to judgment because Kinney offers no evidence to show a causal connection between her protected activity and the denial of the accommodation. In fact, the evidence is to the contrary. With regard to protected activity, Kinney cites her February 6, 2019, e-mail to Daech. As noted above however, that communication did not involve protected activity because it did not involve a complaint of unlawful discrimination. Kinney also cites her September 12, 2019, complaint, and her December 5, 2019, EEOC Charge of Discrimination. The denial of her accommodation request did not occur until the earliest on October 23, 2020. (*See* R. 54-21.) Therefore, a ten-month gap exists between her last protected activity and the denial of her request for accommodation. In the absence of any other

evidence of a causal connection, this gap in time refutes Kinney's retaliation claim. *Sauzek v. Exxon Coal USA,* 202 F.3d 913, 919 (7th Cir. 2000) (A three-month gap is too long to sufficiently raise an issue as to a causal connection between protected activity and adverse employment action.); *Filipovic v. K & R Express Sys., Inc.,* 176 F.3d 390, 398-399 (7th Cir. 1999) (A four-month gap is too long to raise an issue as to any causal link.).

Kinney has not shown an adverse employment action or, even if an adverse action occurred, any causal connection between the protected activity and the adverse action. The District Court properly granted summary judgment to St. Vincent on the ADA retaliation claim.

### C. The ADA discrimination claim fails.

Kinney seeks to establish an ADA discrimination claim using the indirect method of proof. As such, she must establish a *prima facie* case by showing: (1) that she is disabled; (2) that she met her employer's legitimate performance expectations; (3) that she suffered an adverse employment action; and (4) that similarly situated employees without a disability were treated more favorably. *Dickerson v. Bd. of Trs. of Comm. College Dist. No. 522,* 657 F.3d 595, 601 (7th Cir. 2011).

Kinney cites St. Vincent's denial of her request to work from home as the adverse employment action supporting her discrimination claim. For the reasons discussed above, the denial of her accommodation request cannot serve as an adverse employment action. First, she was not entitled to the accommodation, so its denial is lawful. Second, even if she were entitled to the accommodation, the denial would not

serve as the basis for an ADA discrimination claim.  Non-accommodation cannot do "double duty" as evidence of an adverse employment action.

Additionally, Kinney has offered no evidence that a similarly situated employee without a disability was treated more favorably.  To the contrary, the evidence shows that every direct report to Kinney's supervisor (other than Kinney) and every employee in the department she managed worked on site.  The record is devoid of evidence of discriminatory intent.

## III.  The District Court properly granted St. Vincent's motion for summary judgment as to Kinney's Title VII claims.

On appeal, Kinney limits her Title VII claims to a failure to promote claim as to two positions for which she applied and a retaliation claim.  St. Vincent is entitled to judgment as to both claims.

### A.  The Title VII failure to promote claim fails.

#### 1.  Warrick Hospital Administrator

As described above, Parod worked with a recruiter to identify qualified candidates based on their applications. Following interviews, Parod selected two finalists – one male, one female – for a second round of interviews. All three managers involved in the second interviews stated their preference for Mattingly. Parod believed Mattingly was the best candidate because he met the qualifications for the role, had the operational experience needed for the position, and demonstrated an understanding of what was needed at Warrick Hospital to be successful during his interview.  Parod did not select Kinney as a finalist because he did not find her interview convincing as described above.

As an initial matter, Kinney misstates the evidence in claiming Mattingly "admitted that his only experience was serving as the interim Administrator for a mere five (5) months." (Appellant's Brief, p. 16.) Mattingly testified to 11 years of experience in hospital administration. Prior to his employment with St. Vincent, Mattingly served as VP of HR for a hospital for four years. (R. 44-8, pp. 7:14-11:8.) His duties in that role included operational responsibilities for several hospital departments, including HR, wellness programs, child-care facilities, project management, and environmental services. (*Id.*) Mattingly then joined St. Vincent as Director of Human Resources and Development in 2012 and remained in that position until 2019. (R. 44-8, pp. 11:9-13:19.) His duties in that role included managing a staff of 15 to 20 department employees, overseeing the HR department and recruiting, development of educational programs throughout the hospital, overseeing the hospital's wellness department, working with medical and other staff on clinical licensure issues, and serving on the hospital's executive team that created strategic processes and plans. (*Id.*) Following this position, Mattingly served as interim Administrator of Warrick Hospital.

Kinney alleges she was more qualified than Mattingly because he had no prior clinical, billing, or federal billing regulation experience. But Kinney fails to explain what these specific functions entail, whether they are relevant to the Warrick Hospital Administrator position, or why they made her more qualified than Mattingly. Kinney also states she "had over 25 years of experience in the operation of service lines in the healthcare industry" without explaining what specific

experience she had, how it was relevant to the Warrick Hospital Administrator position, or how that experience made her more qualified than Mattingly.

Even if Kinney were able to make out a *prima facie* case, she is unable to show St. Vincent's non-discriminatory reasons for hiring Mattingly are pretextual. Kinney's only argument is based on Mattingly's qualifications. Evidence of Mattingly's qualifications would only serve as evidence of discrimination if the differences between Kinney and Mattingly were "so favorable to [her] that there can be no dispute among reasonable persons of impartial judgment that [she] was clearly better qualified or the position at issue." *Hobbs v. City of Chicago,* 573 F.3d 454, 462 (7th Cir. 2009). "[Kinney's] mere assertion that she is better qualified will not do the trick." *Id.*

Kinney further argues that the hiring decision was tainted by Greaney's alleged hostility towards Kinney and that "Greaney's testimony that Kinney's interview 'wasn't convincing' doesn't hold the weight that the District Court gave it." (Appellant's Brief, pp.16-17.) As an initial matter, Kinney asserts Greaney "did not like Kinney because she was a woman" without citation to any record evidence. Additionally, this argument confuses Greaney and Parod. It was Parod who made the hiring decision for the Warrick Hospital Administrator position, and it was Parod who testified that he did not find Kinney's interview convincing. Kinney offers no evidence that Parod was biased against her because of her gender.

### 2. VP Finance, St. Mary's Health System

Kinney applied for the VP Finance, St. Mary's Health System position that was filled in 2019. (R. 44-12, ¶ 11.) The VP Finance position is housed within Ascension

St. Vincent Evansville. (*Id.*, ¶ 12.) The duties include monitoring financial performance, maintaining financial plans and forecasts, budgeting, planning and coordinating financial resources, and serving as liaison on financial matters among executive leadership and management. (*Id.*, ¶ 12.) The position requires education and experience related to finance and accounting. (*Id.*, ¶ 12.)

Zach Zirkelbach was selected to fill the position of VP Finance. (*Id.*, ¶ 13.) Zirkelbach was the most qualified candidate for the position based on his education and experience. (*Id.*, ¶ 14.) Zirkelbach holds a Bachelor of Science degree in Accounting and Finance and Master of Business Administration. (*Id.*, ¶ 15.) Zirkelbach is also a Certified Public Accountant. (*Id.*, ¶ 15.) Prior to filling the VP Finance position, Zirkelbach worked his way up the finance department at Ascension St. Vincent Evansville, serving as Senior Director of Finance, Director of Finance, and Senior Financial Analyst over the span of five years. (*Id.*, ¶ 16.) These positions provided direct experience in finance and accounting at Ascension St. Vincent Evansville and allowed Zirkelbach to develop working relationships within the finance department. (*Id.*, ¶ 17.) Zirkelbach's promotions through the ranks of the finance department reflect his successful completion of duties in each of the positions he held. (*Id.*, ¶ 17.) Prior to joining Ascension St. Vincent Evansville, Zirkelbach spent three years as an audit associate with a public accounting firm. (*Id.*, ¶ 18.) Zirkelbach's education and experience in finance and accounting, including five years of experience in the finance department at Ascension St. Vincent Evansville, made him the most qualified candidate for the VP Finance position. (*Id.*, ¶ 19.)

Kinney testified she was qualified for the VP Finance position despite the fact she could not remember the duties of the position. (R. 44-1, p. 55:12-13.) Kinney also testified she was qualified for the VP Finance position because she made "financial decisions" as part of her position overseeing a department. (R 44-1, pp. 53:2-56:17.) These financial decisions included capturing revenue and controlling expenses within her department. (*Id.*) Kinney conceded making these types of operational decisions were not unique to her position and would be made by any operational department leader. (*Id.*)

Kinney claims she was passed over for the VP Finance position despite "already performing a considerable amount of the duties of the position." (Appellant's Brief, p.17.) As an initial matter, Kinney did not know the duties of the VP Finance position, so she could not have known that she was performing the position's duties. Moreover, the duties she claims to have performed consist simply of making decisions that have a financial impact on her department, which would be true of any department head. Those are not duties of the VP Finance position.

Kinney also states she held an MBA for 14 years, while Zirkelbach held an MBA for a much shorter time. However, Kinney fails to explain why her MBA is relevant to the VP Finance position or makes her more qualified than Zirkelbach. Kinney also neglects to mention that Zirkelbach was a Certified Public Accountant while she is not.

Kinney further argues she had more "leadership experience" than Zirkelbach, but again fails to explain why her leadership experience is relevant to the VP Finance

position or made her more qualified than Zirkelbach. Kinney also did not have experience in finance and accounting, which is directly relevant to the position.

Even if Kinney were able to make out a *prima facie* case, she is unable to show St. Vincent's non-discriminatory reasons for hiring Zirkelbach are pretextual. Kinney's mere assertion that she was more qualified than Zirkelbach is insufficient. *Hobbs v. City of Chicago,* 573 F.3d 454, 462 (7th Cir. 2009). Additionally, Kinney not only fails to identify the decisionmaker for the VP Finance position, but she also fails to show that the decisionmaker bore any discriminatory animus based on her gender.

St. Vincent is entitled to judgment on the failure to promote claims.

### B. The Title VII retaliation claim fails.

Kinney's Title VII retaliation claim fails for the same reason her ADA retaliation claim fails. Specifically, the denial of an accommodation cannot support a retaliation claim. Additionally, because Kinney was not entitled under law to her requested accommodation, the denial of the accommodation cannot support a retaliation claim.

Even if failure to accommodate could serve as an adverse employment action for a retaliation claim, St. Vincent remains entitled to judgment because Kinney offers no evidence to show a causal connection between her protected activity and the denial of the accommodation. As noted above, a ten-month gap exists between her last protected activity and the denial of her request for accommodation. In the absence of any other evidence of a causal connection, this gap in time refutes Kinney's retaliation claim.

Kinney has not shown an adverse employment action or, even if an adverse action occurred, any causal connection between the protected activity and the adverse action. The District Court properly granted summary judgment to St. Vincent on the Title VII retaliation claim.

## CONCLUSION

For the reasons set forth above, this appeal lacks merit and the District Court's decision to grant St. Vincent's motion for summary judgment should be affirmed.

Respectfully submitted,

Dated: January 4, 2023                     St. Mary's Health, Inc., d/b/a
                                           Ascension St. Vincent Evansville, Inc.


                                   By /s/ Michael W. Padgett___
                                      One of Its Attorneys

Michael W. Padgett
Jackson Lewis P.C.
211 North Pennsylvania Street, Suite 1700
Indianapolis, Indiana 46204
Tel: 317.489.6930
Fax: 317.489.6931
Email: Michael.Padgett@jacksonlewis.com

<u>CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMIT</u>

The undersigned counsel of record hereby certifies that this brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7) because this brief contains 6,159 words in combined text and footnotes, excluding the Table of Contents, Table of Authorities, Rule 26.1 Certificate of Interest, and Certificates of Compliance, which are exempted by Fed. R. App. P. 32(a)(7)(B)(iii). In making this certification, the undersigned counsel relies on the word-count feature of the Microsoft Word software used to prepare this brief.

By: <u>/s/ Michael W. Padgett</u>

Michael W. Padgett
Jackson Lewis P.C.
211 North Pennsylvania Street
Suite 1700
Indianapolis, Indiana 46204
Tel: 317-489-6930
Fax: 317-489-6931
Email: Michael.Padgett@jacksonlewis.com

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on January 4, 2023, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Seventh Circuit using the CM/ECF system.  I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

By:  /s/Michael W. Padgett

4874-8107-1686, v. 1